Judge Ewing
delivered the Opinion of the Court.
Tunstall, with Crutcher as his security, executed a replevin bond, to Trabue, for six hundred and seventy dollars, dated the 7th August, 1823, with interest from the date, payable in three months.
In March, 1833, Crutcher filed his bill, and obtained an injunction, against the judgment. He charges that?without his privity or knowledge, lime and delay were granted by Trabue to Tunstall, in various instances, and in consideration of the most oppressive exactions of usury, by which Tunstall was exhausted, and an attempt then made to compel him (Crutcher) to pay the replevin-bond.
Appeals by both parties.
Decree of the Circuit Court.
The surety in a replevin bond may—with or without the assent of the principal—insist that credit shall be given on the bond, for usury exacted of the principal, for forbearing to collect the bond.
He prays to be entirely released from the’ debt, or, if that cannot be done, that he be allowed credits for the usurious sums paid.
Tunstall and Trabue are made defendants. Tunstall answers — making his answer a cross bill against repeating and adding to the charges made in Crutcher’s bill, as to the usurious amounts exacted of him.
Trabue answers Crutcher’s bill, and also an amended bill filed by him, admitting in part, and denying in part, the sums paid as usury, and exhibits a writing, signed by Crutcher, dated the 15th of January, 1825, in which he agrees “to take no advantage of any indulgence which G. W. Trabue may have given heretofore, or may hereafter give to J. T. Tunstall on said bond,” &c.
He also answers the cross bill, denying and admitting in part, and relying upon the statute of limitations.
From the decree rendered, both Crutcher and Trabue have appealed to this court.
It is difficult to understand clearly, what the court has decreed in the case. At the September term, 1823, on, a motion to dissolve, an order was made dissolving the whole of the injunction, except as to four hundred and sixty-two dollars. And, at the December term, 1825, on final hearing, the injunction was dissolved for one hundred and sixty-five dollars — “part of the sum herein “ before enjoined with interest thereon, at the rate of six “ per cent, per annum, from this day until paid:” — ‘“And “ that the complainant’s injunction be made perpetual “ for all the residue of the defendant Trabue’s demand “ in the bill mentioned.”
We presume that the order and decree of the Courts taken together, mean, that the injunction was dissolved on the motion, as to all but the four hundred . and sixty two dollars, and that on the hearing, it was further dissolved as to one hundred and sixty-five dollars of that amount and interest. This being the Understanding of it, we will proceed to examine it.
And first as to the statute of limitation relied on by Trabue:—
The statute of limitations, to be a good bar in eq. must be pleaded, or relied on in some way.
A surety files his bill against, the creditor & principal debtor, charging usury between them, and insisting upon a credit, upon the bond for the sum exacted for usury. The principal debtor makes his ans’r a cross bill, relying upon same facts. The creditor pleads the statute of limitations as a bar to the cross bill only; not to the original bill: the answer makes no issue between the original comp’t and deft; and as the limitation is not set up in the ans’r to the original bill,it is not available against the compl’ts demand.
When a debtor pays money to his creditor for usurious interest upon the debt, Equity will neither permit that application nor permit the it, while the debt and legal interest remain unpaid; but will consider the creditor for the use of the debtor, (tho' such was not the intention of the parties,) and which ought then, to have extinguished thus much of the debt; and when the debtor, or his surety, insists that it shall be so applied, the statute of limitations is no answer to the demand.
*82 We think it cannot be doubted, that Crutcher, as a surety, may set up and claim, as credits upon the bond in which he is bound, sums that have been exacted from his principal, as usurious interest, by his separate bill filed for that purpose, with or without the assent of his principal. He is bound in the bond, and is looked to for its payment, and has an equitable interest in the application of the funds advanced, towards the extinguishment of the bond, for which he is bound, and on account of the forbearance of payment of which, the usurious exactions were made.
It is equally clear that the statute of limitation, to be a good bar, in a court of equity, as well as in a court of law, must be pleaded, or relied on in some form.
In this case, though the statute is pleaded in Trabue’s answer to Tunstall’s cross bill, it is not pleaded or relied on, in any shape, in either of his answers, to Crutcher’s bill. No issue is made between Crutcher and Trabue on that subject.
It was not the duty of Crutcher to reply to the allegation made in the answer to Tunstall’s cross bill, nor to controvert that allegation, by his proof. He was not bound to go further, in the preparation of his case, than to sustain the averments in his own bill, and controvert those that are set up in bar or avoidance, in the answers of Trabue to it.
Had Trabue attempted to show, by proof, that the advancements made by Tunstall were within the operation of the statute, he could not use such proof in his contest with Crutcher, as there was no allegation in his answer to justify its introduction.
He might have felt disposed to rely upon the statutory bar, as to Tunstall, and not disposed to rely on it, as to Crutcher. And he has manifested that disposition, by the obvious difference, in the grounds taken in the answers to each of their bills.
But we cannot yield our assent, to the proposition, that the statute, had it been relied on, would operate as a bar under the circumstances of this case.
The sums paid by Tunstall were advanced as usurious interest, for the forbearance of payment of the bond *83 enjoined. They were paid on account of the bond, and to discharge the excessive interest demanded apon it. As it was. illegal to apply the money paid to the extinguishment of the excessive interest claimed., it would seem equitable and proper, and consistent with the implied understanding of the parties, in the event of the statute being relied on, to apply it towards sinking the principal and legal interest.
A court or chancery would assuredly never permit him to recover back those payments, though he had sued within the five years, while a large balance remained due and unpaid on the bond. He would be compelled to do equity before he would be permitted to ask it. And it would certainly be equitable, for him, first to pay up his bond. Fonblanque’s Equity, 246-7, side page and note.
As the action of assumpsit would be his remedy at law, and that is an equitable action, we would think, under similar circumstances, he ought not to recover it back at law.
When a payment is made on an illegal contract, it is paid for the use of the payer, and a promise is implied to refund it, m the general. But when the principal and interest remains due and unpaid, and a payment is made, on an illegal contract for usury, why may not a contract be implied, to apply it towards the extinguishment of the principal and legal interest?
The law implies a promise to refund, because it is equitable and just. Is it not more equitable and just to apply it towards lessening the principal loaned? And if so, would not the law imply a promise, so to apply it?
By the contract between the parties, the money paid is neither to be refunded, nor so applied. But when that contract is avoided by the borrower, the law raises a promise by implication, with respect to the money paid as usury, and while the money borrowed remains unpaid, we think will not raise a promise to refund, but to apply it to the payment of the sum justly due.
If we are right in this view of the case, the statute will not run as to so much of the usurious advancements, as may be sufficient to cover the principal and legal interest due.
A surety agrees with the creditor to take no advantage of any indulgence which he had given, or, might give, to the principal: the agreement cannot be restricted to gratuitous indulgence only, but extends to forbearance purchased by usury.
*84 In Fitzroy vs. Gwillim, Term Rep. 153, it is said that, “ the plaintiff, to entitle himself to relief in a civil action, must show that he has done all that equity requires”— “In an action, therefore, to recover goods, which the plaintiff had pawned, upon an usurious contract, the Court held, that the plaintiff must show, that he had tendered all the money really advanced.”
And in the case of Wheaton vs. Hebbard, 20, John Rep. 293, which was an action of assumpsit to recover back usury paid, and the objection made,, that the plaintiff had not shown that he had paid the principal and legal interest, the court say: “The law considers the borrower “ rather as a victim than an aggressor. The statute “ prohibits usury in order to protect needy and necessitous persons from the oppression of usurers, who are “ eager to take advantage of the distress of others, and “ who violate the law to complete their ruin. In such “ a case, the maxim of potior est conditio defendentis, has “ never been applied. That the party injured cannot “ recover back any part of the principal and legal inter- “ est; and to entitle'him to maintain the action, he must “ show that he has done all that equity requires. In this “ case, had the objection been made, that the principal “ was unpaid, the defendant in error (who was the bor- “ rower) ought to have proved such payment.” Bacon, Usury, G.
If the, action will not lie, until the principal and legal interest is paid, the statute cannot commence running until the payment is made.
We are aware that this Court, in the case of Hodge vs. Owings, 5 Monroe, has intimated a contrary opinion. But that is a single case, which seems to have been hastily given, without a review of the authorities, and without any adjudication, that we have seen, to sustain it.
We, therefore, are clearly of opinion, that Crutcher may ask, that the usurious advancement may be applied as credits upon his bond, and the statute will not bar them.
But it is contended, by his counsel, that he ought to be released from the whole bond, notwithstanding his agreement that Trabue might grant indulgence to Tun *85 stall, his principal — upon the ground that the agreement authorized, him to grant indulgence. as a favor only.— And that he had, as the price for the indulgence, made enormous exactions from him, so as to lessen his ability to pay, and greatly to increase the risk of Crutcher,
The bill charges that the creditor received a note that was assigned to him, as usury on the debt in controversy; def’t, in his answer, admits that he received and collected the note but says he does not remember whether it was for interest on the debt in controversy, or on other loans’— ‘it was probably the latter — the entries' on his books go to show that such was the fact, but his recollection is not exact; and he is not certain’ — the books not exhibited, and no proof of any ‘other loans’: this answer, by a usurer, is deemed evasive: so held, that he must give credit for the amount of the note, upon the debt in contraversy.
We cannot sustain this view of the case. The authority to allow time is general, and without restriction as to the terms upon which it might be granted.
Besides, Tunstall’s ability to pay, could not be lessened to a greater extent than the amount of the usurious exactions made of him. If all those exactions ape applied as credits upon the bond, as of the date when made, the bond will be reduced to the same extent that his ability to pay, was lessened, and Crutcher has the benefit thereof, in reducing the amount of his liability.
But on the one side, it is contended that too much usury was allowed as a credit, and on the other, too little.
There is no difficulty as to the amount, only as to one note — the note on Samuel Jordon for one hundred dollars, taken in lieu of a note, of the same amount, executed by Tunstall to Trabue, dated in August, 1825.
Jordon’s note is expressly charged, in the complainants bill, to-have been received as usury on the bond by Trabue from Tunstall. Trabue, in his answer, acknowledges the receipt of the note, and collection of the money thereon. But says that, “he does not remember ‘ whether it was given for indulgence on said replevin “ bond or not. Your respondent frequently lent said A Tuns.tall money to larger amounts, and the note was ‘ probably given for interest, on other moneys lent. And the entries on your respondent’s books, go to show, that it was. Your respondent’s recollection not being exact, he is unable to state with certainty.”
His books are not produced, or extracts from them. Nor does he attempt to prove, that he had ever advanced Tunstall a dollar on loan, other than the amount for which the bond was given.
We cannot, therefore, presume, that the hundred dollar note was given for interest on other moneys advanced, when none is proven to have been advanced.
*86 Again: the recollection of usurers are generally very frail, and when they answer a positive charge in the bill, by stating they do not remember, and it was probably given for other moneys loaned &c. the mind is strongly impressed, with the conviction, that the charge is true, and the evasiveness of the answer will justify that conclusion.
This note, with the interest thereon, will amount to within a few cents of the sum of one hundred and sixty-five dollars, for which the Court dissolved the injunction, upon the hearing, and which was, no doubt, retained, on the motion to dissolve, to make up the sum of four hundred and sixty two dollars, for which the injunction was then retained. We think it was rightfully retained, and the injunction should have been made perpetual, as to the whole amount then retained, as of the date when the motion was made to dissolve; and that so much of the decree, upon the hearing, as dissolves the injunction for one hundred and sixty-five dollars and interest, part of the sum before retained, is erroneous. And the decree as for that amount also, should have been made perpetual.
It is, therefore, the opinion of the Court, that the decree of the Circuit Court, on Crutcher’s appeal, be reversed, and the cause remanded, that a decree may be entered in conformity to this opinion, and that on Trabue’s appeal, to be affirmed, and that Crutcher recover his, posts in both appeals.