NATHANIEL A. WARE'S ADMR'S AND OTHERS v. JOHN H. AND EZRA B. BENNETT.

That a payment of usurious interest was voluntary is no answer to the application of the debtor to have it set off, or appropriated to the reduction of the principal ; nor is the Statute of Limitations an answer to such application, while any part of the principal remains unsatisfied.

It is immaterial by what name the plea is called, or in what form the relief is claimed ; the Court will look to its substance. There was a prayer for general relief.

The fact that a debt secured by mortgage, duly recorded, has been due for more than four years, and no suit has been commenced to foreclose the mortgage, will not authorize subsequent purchasers from the mortgagor to assume that such mortgage debt has been paid or is barred by the Statute of Limitations ; the bar of the Statute may have been precluded by acknowledgment in writing, which is not required by law to be recorded, but of which subsequent purchasers are bound to take notice.

Where the existence and validity of proceedings in a suit between other parties is put in issue by the charges in the petition , the transcript of such proceedings are admissible in evidence in behalf of the defendant.

The competency of a party, when called as a witness by the opposite party, if he is willing to testify, rests on the sole question of interest, unaffected by the circumstance that he is a party to the suit.

The trustee with power to sell, in a deed of trust to secure the payment of a debt, has no such interest as will preclude him from being a witness for the plaintiff, in a suit by the creditor to recover judgment for the debt and for the sale of the trust property.

If without the authority of his principal, he (the agent, offered as a witness) had loaned his money on usurious interest, it is said, he would be liable to his principal for the loss of legal interest, sustained by his misconduct. It is a sufficient answer to this, that the principal has ratified the contract of the agent, by seeking to enforce it in this suit, and to avail himself of the usurious interest contracted for by the agent.

Where an agent who negotiated a loan in behalf of the lender, secured on real estate, is offered by the principal, as a witness, on an issue as to the postponement of said security to another previously recorded, it is not a good objection to his competency, that if the security which he took, should be postponed, it will probably prove insufficient, and he possibly thereby become liable to his principal to that extent.

Ware v. Bennett.

Appeal from Galveston. Tried below before the Hon. James H. Bell.

On the 18th day of August, 1842, John H. Bennett, of Galveston, executed a mortgage on lot number twelve in block numbered six hundred and eighty-one, and the improvements thereon, to secure the payment of his note to his brother Ezra B. Bennett of the city of Albany in the State of New York, for the sum of $1812 94, and interest thereon, on or before the first day of January next thereafter. Filed for record and recorded August 22, 1842.

On the 12th day of October, 1850, John H. Bennett executed a deed of trust to John L. Darragh and W. B. P. Gaines, on the same property, to secure his note to Nathaniel A. Ware, of same date, payable in twelve months, for $3000, and twelve other notes for fifty dollars each, payable at one, two, three, four, five, six, seven, eight, nine, ten, eleven and twelve months respectively; which deed was duly recorded. The transaction took place at Galveston; one Henry Hubble signed the large note jointly with said Bennett. On the 28th of April, 1852, John H. Bennett also executed a deed of trust on same property to L. M. Hitchcock and Stephen Van Sickle, to secure to Stacy B. Lewis and Allen Lewis, the payment of $478 75 at twelve months, with interest from date, at twelve per cent. per annum. Deed duly recorded.

On the first day of Dec., 1853, suit was commenced in the U. S. District Court, at Galveston, by Ezra B. Bennett, against John H. Bennett, to foreclose the mortgage of 1842; on the 22d of March, 1854, a decree of foreclosure was rendered, and on the 5th of December, 1854, the property was sold under said decree, and Ezra B. Bennett became the purchaser for a few dollars less than the amount of his debt. The subsequent incumbrancers were not parties to said suit. This suit was commenced on the 29th of March, 1855, by the administrators of Ware, who had died in the meantime, to subject the property to the claim of said Ware. Ezra B. Bennett, John H.

Bennett, Gaines, Darragh, Hitchcock, Van Sickle and Allen and Stacy B. Lewis were all made defendants.

The petition contained the following: But now so it is, may it please your Honor, the said John Bennett, combining and confederating with his brother, the said Ezra B. Bennett, under the pretence that he, the said John H. Bennett, was honestly and fairly indebted to the said Ezra B. Bennett, in the sum of one thousand, eight hundred and twelve dollars, ninety-four cents, with interest at eight per cent. per annum from the first day of June, 1842, for which the said Ezra B. Bennett held the note of the said John H. Bennett, dated first day of December, 1841, payable six months after date, falsely and fraudulently now holds out that said John H. Bennett, on the 18th day of August, 1842, conveyed the said lot and improvements thereon in the said city of Galveston, before mentioned, in the mortgage to said Ezra B. Bennett to secure the payment of the said note held by him as aforesaid, and that, by decree duly obtained in the District Court of the United States for the District of Texas, at Galveston, the equity of redemption of the said John H. Bennett in and to said lot and improvements was foreclosed, and said lots and improvements ordered to be sold, and that said Ezra B. Bennett became the purchaser of the same, by virtue of the mortgage debt in satisfaction of so much as was his bid therefor, and that he has obtained conveyance in fee of the same. The contrary of all which your petitioners aver to be true, and they aver upon information, and which they believe and are advised, that said note pretended to be given by said John H. Bennett to said Ezra B. Bennett was not secured by mortgage as aforesaid ; that no such mortgage as that alleged was ever given and executed by said John H. Bennett ; that the decree before mentioned, was founded upon false and fraudulent statements and charges, both in the bill filed by the said Ezra B. Bennett, and in the answer of the said John H. Bennett ; that no debt was ever due, either when the pretended note was given, when

said supposed mortgage was executed, or at any other time. And your petitioners do verily believe and so charge that the actings and doings of the said John H. Bennett and Ezra Bennett, were contrived, intended and got up, with the view, intent and purpose to hinder, delay and defraud your petitioners and the other creditors of the said John H. Bennett. And your petitioners were not parties to the decree rendered against said John H. Bennett for foreclosure of said mortgage in favor of said Ezra B. Bennett, or the suit in which said decree was rendered, and they are advised that they are not bound by the same.

The trustees disclaimed all interest. Alien and Stacy B. Lewis, adopted the allegations of the plaintiff; alleged the facts of their claim, and joined in the prayer for their own interest. Ezra B. and John H. Bennett, answered separately by allegation of the circumstances of the original indebtedness of the said John to the said Ezra ; and alleged that on the 28th of July, 1846, and on the 20th of December, 1849, and on 5th of November, 1852, respectively, the said John gave to the said Ezra written stipulations, acknowledging the justness of said claim, and promising to pay it and not to plead the Statute of Limitations ; (said stipulations were marked C, D, and E, in the suit in the United States District Court ;) denied all allegations of fraud, and alleged that Ware had actual notice of the mortgage when he took the deed of trust.

John H. Bennett also pleaded that the transaction between him and Ware was a loan of $3000, upon which he agreed to pay Ware interest at the rate of twenty per centum per annum ; that the twelve small notes were for said interest ; that this defendant had paid said small notes ; and he also alleged other payments of usurious interest on the same loan, amounting in all to $1562 50, " for which he reconvenes upon the plaintiff " and prays judgment of this Honorable Court therefor, or for " such other order or decree of this Court in the premises, as " law and justice may require."

To so much of the answers of Ezra B. and John H. Bennett, as alleged the several renewals, plaintiffs replied by the allegation, that said renewals were not recorded, and that plaintiff had no notice thereof. To so much of the answer of John H. Bennett as alleged usury, and claimed to be allowed the payments made thereof, plaintiff replied that if he ever made any such payments, they were voluntarily made, and said defendant is not entitled, &c. Also plea of Statute of Limitations of two years, to the claim of said payments. To the reply that the payments were voluntarily made, and to the plea of limitation, the Court sustained a general exception.

The evidence was as follows : Plaintiffs introduced the note to Ware for $3000, and the deed of trust to secure the same. Allen and Stacy B. Lewis introduced the note to them and the deed of trust to secure the same.

Defendant Ezra B. Bennett then introduced a transcript of the judgment in the United States District Court, referred to in the pleadings, the order of sale, and the Marshal's deed to him. Said defendant read in evidence the renewals of the mortgage debt, as alleged in his answer.

Defendant John H. Bennett, then called E. P. Hunt, who testified as follows : That at the time of the making of the note and giving of the mortgage or deed of trust by John H. Bennett for the benefit of Ware, the said John H. Bennett was unwell, and he, Hunt, negotiated the loan by Ware to Bennett, for which the said note and deed of trust were given ; that the note for three thousand dollars, given in evidence was for the amount of money loaned for twelve months. The loan was at twenty per cent. per annum for twelve months, and the twelve small notes of fifty dollars each, mentioned in the deed of trust were for the interest at twenty per cent. for one year, and said small notes were all paid by said Bennett after maturity of the three thousand dollar note. The loan was further extended for two months, and the same rate of interest (twenty per cent. per annum) was

agreed upon and paid, amounting to $100, and from that time up to the 14th of August, 1853, by agreement between Ware, by his agent and Bennett, interest was paid on said note at fifteen per centum per annum, amounting in all to the sum of eight hundred and fifty dollars, making altogether for interest, on said loan of three thousand dollars, the sum of fourteen hundred and fifty dollars, for three years and ten months. The witness further testified that the negotiation for said loan was made with John L. Darragh, the agent of Ware, who informed the witness that there was a mortgage on record in Galveston county by said John H. Bennett to Ezra B. Bennett, which was the first knowledge the witness had of the existence of said mortgage, and that he, the witness, did business for John H. Bennett in his house, and as his clerk from the year 1845, up to the year 1853 ; that the writings marked C, D, & E, in the transcript from the United States District Court aforesaid, the originals of which were exhibited to witness, are in the proper handwriting of John H. Bennett and signed by him. The last of said documents, that marked E, was executed in the witness' presence, and was acknowledged before him and certified by him as a notary public, on the day it bears date, and was then sent by John H. Bennett to Ezra B. Bennett in a letter by mail. Witness never did state to John L. Darragh, the agent of Ware, that the money, secured by the mortgage to Ezra B. Bennett, had been paid. That in consequence of the existence of the prior lien, or record, from John H. Bennett to Ezra Bennett, the said Darragh, as the agent of Ware, required also the signature of Henry Hubbell as security to the note for the principal sum, and further required a policy of insurance to be effected on the buildings against loss by fire, and the assignment of the policy to Mr. Ware ; all of which was done.

The Judge instructed the jury without request, as follows :

The jury is instructed that, if N. A. Ware contracted for and received more than twelve per cent. per annum interest on the

sum of three thousand dollars loaned to John H. Bennett, and for which the note and deed of trust sued on, were executed, then such contract was usurious and contrary to law, and the said Ware was not entitled to any interest on said loan of money, but was only entitled to recover back the principal sum of $3000 ; and if any payments were made, as payments of interest on said sum of money, the maker of said note is entitled to have said sums so paid, as interest deducted from said principal sum of three thousand dollars. and the balance remaining, after deducting the payments of interest so called, is all that the payee of the note, or the lender of the money can recover.

If the jury believe from the evidence that the mortgage executed by John H. Bennett to Ezra B. Bennett, and the note for $1812 94, were executed by John H. Bennett in good faith. and for a really subsisting debt, and that the subsequent promises, made in 1846, 1849 and 1852, were made in good faith and without intent to defraud others, then the mortgage executed in 1842, remained a binding and subsisting security for the debt due by John H. Bennett to Ezra B. Bennett, until the same was foreclosed in the United States Court ; and said mortgage was a preferred lien to the deeds of trust, subsequently executed to Ware and Lewis.

If however the mortgage executed by John H. Bennett to Ezra B. Bennett in 1842, was executed without valuable consideration, or when John H. Bennett was not indebted to Ezra B. Bennett, and if the subsequent renewals of the note and mortgage in 1846, and in 1852, were made with John H. Bennett, without valuable consideration and with intent to defraud others, then the mortgage executed in 1842, was a nullity so far as third persons were concerned, and the plaintiff Ware, and defendants, Lewis & Lewis, are not at all affected by the execution of said mortgage or by the decree of foreclosure of the same by the United States Court.

Whether or not the mortgage to Ezra B. Bennett and the re-

newals of it were executed in fraud, is a question for the jury, and the jury will state in their verdict whether the mortgage made in 1842, by John H. Bennett, and the renewals of it in 1846, 1849, and in 1852, were made in fraud or in good faith.

The following instruction was requested by the plaintiffs, and defendants Allen and Stacy B. Lewis, and refused : That unless Ware and the Lewises when they took their mortgages had notice of the renewals and waivers in evidence, the mortgage of Ezra B. Bennett will be postponed to the mortgages of said Ware and Lewis, and the jury should find for the plaintiffs and said Lewis, and find the amount due on the mortgages respectively.

Verdict and judgment for plaintiffs against J. H. Bennett for $1550 ; for defendants Allen and Stacy B. Lewis against same for $672 ; and for Ezra B. Bennett against the plaintiffs and defendants Allen and Stacy B. Lewis. Motion for new trial overruled, &c. Appeal by plaintiffs and defendants Allen and Stacy B. Lewis. Bills of exception as follows :

Be it remembered that on the trial of this cause, the plaintiffs, by their attorneys, offered a witness in their behalf, John L. Darragh, to whom the defendants, Ezra B. and John H. Bennett, objected as being an incompetent witness ; because, first, he is a party defendant to the suit ; and, second, because he was interested in the event of the litigation ; and the Court sustained said objection, and refused to permit said witness to testify in behalf of the plaintiffs, to which opinion and ruling of the Court, the plaintiffs and the defendants Lewis & Lewis, at the time and before the jury retired excepted, &c.

Be it remembered that on the trial of this cause the defendant Ezra B. Bennett, by his attorney, offered to read as evidence to the jury the transcript and record of proceedings and decree, from District Court of the United States, for the District of Texas, in the suit there lately pending, wherein said Ezra B. Bennett was complainant, and John H. Bennett defendant, made part of the statement of facts in this case, to the

reading of which, as evidence, the plaintiffs and the defendants Lewis & Lewis objected : first, because said transcript is within the rule of things transacted between others ; second, the parties to the record are not the same as in this case; third, neither the plaintiffs nor their intestate Ware, nor the defendants Lewis & Lewis were parties complainants or defendants to said record ; but the Court overruled the said objections, &c.

*R. & A. M. Hughes*, for Ware's administrators, appellants.

I. The allowing the exceptions to the amended petition was error. (Winston v. University, 3 Ala. 588 ; Alsop v. Nichols, 9 Conn. 357 ; Williams v. Randon, 7 Tex. R. 74 ; Ayres v. Cayce, Id. 99, 106.)

II. The rejection of Darragh as a witness was error. (Parsons v. Phipps, 4 Tex. R. 341 ; Dial v. Crain, 10 Id. 444 ; Worrall v. Jones, 20 Com. Law, 180 ; Gresley's Eq. Evi. 337, and notes.)

III. The overruling the objection to the record from the Federal Court. Subsequent incumbrancer is a necessary party, and if not a party to bill by prior incumbrancers, the subsequent is not bound. (Story's Eq. Pl. Sec. 193, and cases referred to ; Finley v. Bank U. S., 11 Wheaton, 304 ; Haines v. Beach, 3 Johns. Ch. R. 459.) The rule is well established that a record cannot be read against any one who is not party or privy thereto. (1 Greenl. on Evi., Sec. 322, 323.)

IV. The objection which was overruled, which was taken to the papers offered in evidence, intended to take the case out of the Statute of Limitations. Time only is evidence that the claim has been released, discharged or abandoned. (Lansdale v. Brashear, 3 Monroe, 330 ; Beard v. Smith, 6 Id. 492–5.) The plaintiff below stood in the room and stead of J. H. Bennett; for when mortgagor made to Ware the conveyance in trust, he parted with all his interest, being an equity of redemption

only ; and Ware having taken the place of J. H. Bennett, no charge could be renewed on the estate, without his consent. The mortgage, if good for any thing at all, only operates from the acknowledgment. (Grayson v. Taylor, 14 Tex. R. 673.)

V. The overruling the instructions asked by plaintiff, as to the necessity of notice, as to the acknowledgments to take the case out of the Statute.

VI. The instruction given, as to having payments made on account of interest deducted from principal. (Wheaton v. Hebbard, 20 Johns. 290 ; Dey v. Dunham, 2 Johns. Ch. R. 182.)

*H. N. & M. M. Potter*, for Allen and Stacy B. Lewis, appellants.

*L. A. Thompson*, for John H. Bennett, appellee. I. The payments made, though expressed to be for interest, must be applied to the liquidation of so much of the contract as was legal, and are therefore to be considered and held payments *pro tanto* of the principal. Such has been the decisions of the Courts of South Carolina, Mississippi, Georgia and other States, where the Statute of Usury is similar to our law. (Clark v. Hunter, 2 Speer, R. 83, 85 ; Harp v. Chandler, 1 Strobh. R. 464 ; Bond v. Jones, 8 Sm. & Mar. 368 ; Winkler v. Scudder, 1 Kelly (Ga.) 108, 135 ; Bailey v. Lumpkin, 1 Id. 392, 409 ; Haas v. Flint, 8 Blackf. R. 68–7.)

And so in Kentucky, where only the excess, or usurious interest, is avoided ; all payments of usury, it is held, should be credited on the legal and valid portion of the contract, the principal and legal interest. (Bartlow v. Bonde, 3 Dana, R. 591 ; Wood v. Gray, 5 B. Monr. 92 ; Booker v. Gregory, 7 Id. 439.)

That the principal sum lent was included in one note, and the interest for the first year, both legal and usurious, was

embraced in the twelve notes specified in the deed of trust, and identified by the witness, makes no difference. (Booker v. Gregory, 7 B. Monr. 439, 441 ; 2 Parsons on Con. 390.)

II. As to the competency of the party, Darragh, to testify in behalf of the plaintiffs. It will doubtless be contended by the appellants that the case at bar comes within the rule in Parsons v. Phipps, 4 Tex. R. 341. But if this case is within the letter of the rule, which we deny, it certainly is not within the reason or spirit of it.

Darragh, it is true, was made to occupy the position of a defendant upon the record, but this was the position assigned him by the plaintiffs ; he might, with much more propriety have occupied the position of a co-plaintiff. He was one of the trustees in the deed of trust to secure the payment of the debt claimed by the plaintiffs to be due to the estate of their intestate ; and the object of the suit was to remove out of its way the prior incumbrance or mortgage in favor of Ezra B. Bennett ; and that the property mentioned and specified in the deed of trust might be decreed to be sold in satisfaction of the plaintiff's debt ; and by the covenants of the deed, it was stipulated that the trustees should have a commission of five per centum on the amount of sales of the property. It was not alleged, or charged, that Darragh had colluded with the defendants John H. Bennett and Ezra B. Bennett, or that he had ever refused to execute the trust ; but for aught that appears, he was ready and willing to do so, if the prior incumbrance could be got out of the way. There was clearly no identity of interest on the part of Darragh with the defendants John H. Bennett and Ezra B. Bennett, or either of them, or in common with them on any of the issues upon which their rights respectively depended ; but on the contrary, so far as we can see, Darragh's interest was with the plaintiffs. Certainly it was not adverse to them.

We do not intend to deny that an interested witness is at all times competent to give evidence to his own disadvantage, if

he is willing to do so ; but we deny that Darragh occupies this position ; or that the plaintiffs can make him competent by joining him in the suit as defendant.

The present case seems more analogous to the case of Dial v. Crain, 10 Tex. R. 444. In that case the plaintiff, who was an administrator, having executed a release of all commission that he was entitled to in that right, offered himself as a witness to prove the case against the defendant ; and this Court determined that he was rightly rejected by the Court below.

Ware's estate cannot, in any just sense, be called a party opposite to the defendant Darragh. Every feeling and every interest in the suit was with the plaintiffs and adverse to the other defendants, John H. and Ezra B. Bennett. If the plaintiffs succeeded in this suit, if they were enabled to set aside the prior mortgage of Ezra B. Bennett, and defeat the defendant John H. Bennett in his defence of usury, it was to the interest of Darragh ; for he was not only entitled by the stipulation of the deed of trust to five per cent. commissions for selling the property ; but he would be enabled to avoid any recourse over upon him for making an usurious contract without authority, or for negligence in not taking sufficient security. (Evans v. Yearthherd, 2 Bing. R. 133 ; Brown v. Brown, 4 Taunt. R. 752 ; Miller v. Falconer, 1 Camp. R. 251 ; Cuthbert v. Gostling, 3 Id. 516 ; Moorish v. Foote, 8 Taunt. 454.)

III. As to the plea of Statute of Limitations to the claim for credit for the payments of usurious interest. This defence is not applicable to payments generally. (Beardsley v. Hall, 9 Tex. R. 119 ; Williams v. Bradsbury, Id. 487.) And as to payments of interest on usurious contracts, see the case before cited of Booker v. Gregory, 7 B. Monr. R. 444.

In Crutcher v. Trabue, (5 Dana, 80,) the Court of Appeals of Kentucky held, that when a debtor pays money to his creditor for usurious interest, equity will not permit it to be so applied ; nor will the debtor be allowed to recover it back by suit, as usury paid, until whatever sum is legally due on the

debt be fully paid ; and therefore the Statute of Limitations will not run against the claim until that time. (See also Estill v. Rhodes, 1 B. Monr. R. 314 ; Wood v. Gray's Ex., 5 Id. 92.)

*P. C. Tucker*, for Ezra B. Bennett, appellee.

WHEELER, J. That a payment of usurious interest was voluntary is no answer to the application of the debtor to have it set off, or appropriated to the reduction of the principal ; nor is the Statute of Limitations an answer to such application, while any part of the principal remains unsatisfied. (Crutcher v. Trabue, 5 Dana, 80 ; Booker v. Gregory, 7 B. Monr. 440, 442.) It is treated as a payment upon that which the law recognizes as a subsisting debt ; and the Statute of Limitations does not apply to payments. Whatever contracts were made for the payment of usury were void under the Statute, and the plaintiff can claim no benefit under them. (Hart. Dig. Art. 1609.)

The plea admits the loan, and sets forth various payments of usurious interest, not amounting in all to the principal sum loaned ; and concludes with a prayer for general relief. It is immaterial by what name the plea is called, or in what form the relief is claimed. The Court will look to its substance ; and that is, to have the payments deducted from the defendant's indebtedness upon the loan. The amended petition does not contain any matter in legal avoidance of the case stated in the plea ; and the Court rightly so adjudged upon the exceptions. The only question to be decided upon the case stated in the plea was, how much of the loan had been reimbursed, and how much remained unpaid. Whatever so remained, after deducting the payments, the plaintiff was entitled to recover, and no more.

The prior mortgage was subsisting and unsatisfied when the plaintiff's was taken. The record was notice to the plaintiff.

The only ground on which he can claim to have it postponed to his junior mortgage, is that of fraud affecting the prior mortgagee. The question of fraud was fairly submitted to the jury by the charge of the Court; they found against the plaintiff upon that question; and their verdict was well warranted by the evidence.

The charge of the Court was correct; and there was no error in refusing the instruction asked by the plaintiff.

There was no error in admitting the transcript of the proceedings in the United States District Court, in the matter of the foreclosure of the prior mortgage. The existence and validity of these proceedings had been put in issue by the petition; and it was competent to prove the fact of their existence. They were admissible under the pleadings, as conducing to show a continuous and consistent claim and assertion of right and title in the first mortgagee.

The only question presented by the record, on which there is cause to hesitate, is as to the correctness of the ruling of the Court rejecting the witness Darragh, as incompetent to testify. The grounds for excluding the witness were: first, that he was a party to the suit; second, that he was interested in the event of the suit. It is the general rule of the Common Law Courts, that a party on the record cannot be received to testify, either in his own favor, if objected to by the opposite party, or against himself if he object. Whether he shall be received to testify upon the merits, after all interest is removed, and where he is willing to testify, in favor of the opposite side on being called for that purpose, depends, it is said, mainly on the question whether the rule of exclusion go upon the mere abstract objection that he is a party, or that he must have some interest connected with that relation. Upon this question there are different and conflicting opinions; and the decisions are not uniform, either in England or this country upon the question of the ground of exclusion, nor, consequently in the application of the rule. (1 Cow. & H. Notes to Phil. Ev. 46

to 56.) In a comparatively late case in England a plaintiff on the record, though a mere trustee and destitute of all interest,. was excluded by Lord Tenterdon at *nisi prius*. But a still more recent case is said to have shaken that principle ; and to have approximated to the doctrines of the Court of Chancery,. and of some of the American Courts of Law. It underwent much consideration by the Common Pleas, and seems to have put the question of policy, on which the rule of exclusion has been supposed mainly to rest, entirely out of the case, provided the party consented to be examined ; and to rest the whole inquiry upon interest alone. (Id. 48 ; Worrall v. Jones, 7 Bing. 395.) In the American Courts of Law, it will be seen by the cases collected in Cowen & Hill's notes to Phillips' Evidence, there have been conflicting decisions. In Chancery a. party totally disinterested is constantly received as a compe tent witness. (1 Cow. & H. Notes, 49, 51, *et seq ;* Sharp v.. Morrow, 6 Monr. 304–5.) It would seem, on principle, that the more liberal rule of Courts of Equity ought to obtain in the Courts of this State. It was accordingly applied in the case of Parsons v. Phipps. (4 Tex. R. 341.) That case decided that the merely being a party to the record does not of itself render the party incompetent to testify, when called for that purpose by the opposite party : if willing to testify, he is competent, notwithstanding the objection of his co-plaintiff, or co-defendant, provided his interest, if any, in the suit, is adverse to the party calling him. The decision makes the competency of the party, when he is called by the opposite party, and is willing to be examined, rest on the sole question of interest. Apart from the consideration that the rule maintained by this decision seems supported by the better reasons, especially considered in reference to our practice, its early adoption by this Court is a sufficient reason for adhering to it, in the conflict of the decisions of other Courts. Nor does the case of Dial v. Crain (10 Tex. R. 444) maintain a different rule. In that case, the plaintiff, who sued as administrator,

proposed himself as a witness to support his own case. The principle on which he was excluded was, that he was not a competent witness to testify in favor of the interest he represented, as a party upon the record.

Darragh, though but a naked trustee, might well be made a party ; and the institution of the suit to enforce the security by judicial process, determined his interest in the power conferred on him in the deed. However the case might be decided, he could not proceed to execute the power. (Shelby and Wife v. Burton, *supra* 644.) If his position in the case rendered him liable, in any event, to a judgment for costs, his interest, in so far, was adverse to the plaintiff. When called by the plaintiff, therefore, he was not incompetent under the decision in Parsons v. Phipps, merely because a party to the suit, nor because of any pecuniary interest in the event of the suit, merely as a trustee with a power to sell.

But it is insisted that, having acted as agent of the plaintiff in making the contract, he would be liable over to his principal for his wrongful act or negligence in the performance of his agency. If, without the authority of his principal, he had loaned his money on usurious interest, it is said, he would be liable to his principal for the loss of legal interest, sustained by his misconduct. It is a sufficient answer to this, that the principal has ratified the contract of the agent, by seeking to enforce it in this suit, and to avail himself of the usurious interest contended for by the agent.

As to the liability of the agent for taking insufficient security, it does not appear that the security taken was insufficient, though the plaintiff should fail in this suit to enforce his mortgage security. He still has the personal liability of the defendant Bennett and Hubbell, and for anything that appears, that may be ample security. But there is no question made in this case, as to the propriety of the acts of the agent. It is not sought to charge the principal on account of any act or omission of his. The case does not depend on the question

whether the agent has been guilty of any tortious act or negligence in executing the orders of his principal, in respect of which he would be liable over to the latter, should he fail in the action, and it is in such cases, that the agent has been held incompetent, by reason of his liability, consequent upon the event of the suit. (1 Greenl. Ev. Sec. 394, 417, 417 ; 1 Cow. & H. Notes to Phil. Ev. 139–40 ; Id. 145 to 152 ; Paley on Agency, 358, 359, 360.) It does not appear that there is any such liability in this case. Agents, as a class, are generally excepted out of the general rule, of incompetency by reason of interest; and in many cases they are admitted, from a principle of public convenience and necessity, to prove the making of contracts, the receipt or payment of money, and other acts done within the scope of their employment, notwithstanding they may have an interest in the contract or act respecting which they are called to testify. (1 Greenl. Ev. Sec. 416, and authorities above cited.)

We conclude that the party, Darragh, was not incompetent to testify at the call of the plaintiff, by reason of his being a party to the record ; nor because of any interest in the event of the suit. However his agency in the making of the contract may incline him to give a version of the transaction most favorable to the plaintiff ; or however his feelings may be supposed to influence him to favor that side, that is not the character of interest which disqualifies a witness. It must be a pecuniary interest ; and he does not appear to have any such interest, at least none in favor of the plaintiff, in the event of the suit. We are of opinion, therefore, that the Court erred in excluding him ; for which the judgment must be reversed, and the cause remanded.

Reversed and remanded.