Chancery.

# Mayhugh *vs* Mayhugh.

Case 112.

### Error to the Fleming Circuit.

*Alimony.*

July 21.

Chief Justice Marshall delivered the opinion of the Court.

Case stated.

Strangers as we are to these parties, except as they appear in the record before us, it is yet impossible to reflect upon their past and present condition, without feelings of deep regret. After a harmonious union of more than twenty years, from youth to advancing age, during which they have reaped in an increasing prosperity and respectability, the fruits of industry and good deportment, and in the midst of a numerous family of children, have enjoyed the happiness which flows from mutual kindness and respect, the scene is suddenly changed. Instead of peace, discord prevails. Distrust succeeds to confidence. Insult takes place of kindness. Strife, reaching even to violence occurs, and at length a separation ensues, and the wife appeals to the laws of the land to secure to her a support independant of the will of her husband. The only cause of this unfortunate state of things is to be found in the fact that the husband, after so long a period of undisturbed confidence in the fidelity of his wife, permitted a suspicion of her chastity, as groundless in any conduct of hers, as it would seem to have been painfully real on his part, to enter and engross his mind. He did not conceal his suspicions, nor reserve them for reasonable proof, nor make them the ground of serious admonition or remonstrance, nor yet did he pursue the course which entire conviction of their truth might have prompted, of leaving his wife or removing her from his home. He reproached her openly and habitually, in the presence of her children, whom he disclaimed as being his, and yielding to his passion, he seldom spoke to her except in the way of anger and insult. The wife seems not to have been of a temper to sink under such a course of provoking persecution, nor does it appear that she endeavored

to soothe her husband or to allay his jealousy. Whether she always retorted when thus assailed by him, cannot be known, but it appears that she sometimes did. Mayhugh denies that he ever used personal violence as charged. But although we are of opinion that he never used such violence as indicated a design to injure her person, or such as occasioned apprehension of injury on her part, it is proved by two of his sons, that on different occasions, even after their verbal altercations had ceased for a considerable time, he would spit upon her and in her face; and after making all due allowance for any bias which these witnesses may have displayed or felt in favor of their mother, we cannot disbelieve the fact thus specifically stated by both. Nor can we omit to remark that it is not the least among the painful consequences of the state of things for which the father must be held responsible, since it has followed, step by step, in almost necessary succession, from his own unfounded jealousy, that the children of common parents have been thus brought to take sides with one against the other, and that the father should find it necessary to charge some of them with improper motives for their conduct in this contest, and to discredit their testimony, if not even to insinuate the charge of perjury.

While the growing discord between Mayhugh and his wife was progressing towards its consummation, the interferance of her relations in her behalf, besides embittering the feelings of her husband and tending to widen the breach between them, led to a quarrel and an assault upon him by her father, which terminated in the death of the latter, killed by Mayhugh in self defence. In consequence of this act, he seems to have thought, and the evidence tends to support the opinion, that he could not safely continue at his residence in Mason county, which was in the neighborhood of his wife's relations, who besides as he supposed, had aggravated their domestic differences. He, therefore, determined to remove to a farm which he owned in the county of Nicholas, and as preparatory thereto, rented out his home farm in Mason. This course rendered it necessary that his family should either accompany him or remove to some other home. And as

his wife and children refused to go with him, a farm in the neighborhood, and near the relations of the wife, was rented by the oldest son, then an adult, to which Mrs. Mayhugh and her children, with a large portion of the household and kitchen furniture and a supply of the provisions on hand and farming utensils and stock, were removed by the wagons and servants of Mayhugh, who also sent with them a negro woman, still retained. He continued to make contributions towards their support until near the end of the year, when the credits which he had allowed to them in two stores, were stopped by his order, and Mrs. Mayhugh, with the family, having got back to the home farm, by renting from the tenant of Mayhugh, who at the time of separation had gone to his farm in Nicholas, Mrs. Mayhugh, at this juncture, filed her bill for alimony. Two questions of fact affecting the character of this separation, are left somewhat in doubt. The one being whether Mayhugh participated in the arrangement for renting the farm to which his family moved when he went to Nicholas county, the other whether he made any effort to prevail on his wife to accompany him, or even desired her to do so. We infer, however, that the arrangement alluded to, was made with his sanction and probably with the expectation, authorized impliedly at least, by him, that he would pay or aid in paying the rent, which however, we are not satisfied that he has done. It seems too, that he proposed that his wife should go to the Nicholas farm, but we are not satisfied that the proposal should not be understood rather as a license than as a solicitation or even request. From these and other circumstances attending the separation, the fair presumption is, that it took place by mutual consent, and that although not perhaps agreeable to either party, it was deemed expedient by both, and was doubtless thus assented to, under the mutual understanding that Mayhugh was to make the necessary contributions towards the support of his wife, and probably with the expectation on his part, that a re-union might take place before the end of the year. Indeed he seems to have visited the family during that period, and to have made various advances for them. He says that he countermanded the orders for

supplying them on his credit as above stated, as a means of inducing his wife to consent to live with him and be supported at home, where he avows his willingness and anxious desire still to receive and support her and his children. But it is, perhaps, unfortunate that he did not resort to other means of inducing her to return, and address himself to her affections rather than to her necessities.

It is perhaps, also unfortunate that Mrs. Mayhugh did not accept the offer of her husband, cold though it may have been, and accompany him to Nicholas. It was not unreasonable that he should desire to leave a neighborhood where he conceived his person to be in danger, and with which perhaps, were associated the causes, however insufficient, of his jealousy. His farm in Nicholas, though not deemed altogether eligible, even by himself, as a residence for his family, would present itself at once, as in point of convenience, an eligible place of removal, at least for a time. The surrender of her objections in compliance with his convenience and with his right to determine the place of his family residence, the removal to a different situation, and a little patience and affection on the part of his wife, might perhaps, have obliterated his unjust suspicions, restored quiet to his own mind, and brought back peace and harmony to the family mansion. If with a reasonable prospect of attaining such a result, by removing with her husband, Mrs. Mayhugh, with the full opportunity for reflection which the occasion afforded, was willing rather to sacrifice this prospect than to yield her partiality for a residence in Mason, or her objections to a residence in Nicholas, we should deem her but little worthy, either of the character given to her by the witnesses, or of that aid for which she appeals to the law. If, as is contended, such were the motives for her perseverance in following her own will and resisting that of her husband, we should be disposed to characterize the separation as being rather an abandonment on her part than on the part of her husband.

But such a conclusion might be as unjust to her as it would be injurious. Without allowing too much weight to the feeling of resentment naturally produced by a

course of conduct on the part of her husband, tending not only to provoke but to degrade her, there is no evidence of any act or assurance of his, on which she could have built a well founded expectation that she might not be subject to the same treatment in Nicholas, among strangers, as she had received in Mason, where she was known and respected. He had neither discarded his suspicions nor retracted his accusations. He had given no evidence of returning confidence and respect. But still nursing the jealousy which was the cause of all the evil, and with feelings exasperated rather than softened by the remaining sense of affection and duty towards his wife, he seems to have habitually preserved a reproachful and threatening silence or to have vented his bitterness in opprobious language or in more contemptuous acts. We cannot say that Mrs. Mayhugh had no reasonable ground to fear that a removal to Nicholas would produce no change. We cannot say that under the existing circumstances, she was imperatively bound in duty as a wife, to go with her husband among strangers, who would receive their impressions from him, and when if not despised abroad, she might at home, and without the support of friends, be reproached as an adultress, and spit upon and spurned as a guilty and degraded wife. If some wives would have encountered every risk in the hope of restoring peace and happiness, some others might have sunk, broken hearted, under the cruel conduct of the husband. Such instances furnish no practical standard for estimating in a Court of justice, either the rights or duties of wives. The criterion by which, in human tribunals, the conduct of human beings is to be estimated, should be formed not according to the rule either of ideal perfection or of occasional excellence, but according to that standard which, being attainable by the various classes to which it is to be applied, is sufficiently high to ensure the preservation and promotion of the morals and good order of society.

*Ideal perfection is not the rule of decision in human tribunals; but the standard of excellence which is attainable by the various classes to which it may be applied.*

If in view even of these principles as applicable to the case before us, we should not say that Mrs. Mayhugh was wholly blameless, either in her occasional retorts, under the provoking language and conduct of her husband, or

*In arriving at a conclusion as to the degree of fault in contests between hus-*

In determining not to accompany him to Nicholas, we are still aware of the injustice of deciding upon the conduct of either party, in view only of detached portions of an entire transaction, and of the necessity in determining the merits of a domestic controversy such as is now before us, of regarding at each stage of the transaction which may be brought up for judgment, not merely the acts then done, but also the existing state of the controversy, the actual relations in which it has placed the parties, and the causes which have produced a state of things in which each claims to justify by the conduct of the other, and how the other acts, which abstractly considered, are obviously inconsistent with duty. When therefore, on looking to the origin and course of this unfortunate difference between parties who had long maintained in its true spirit, a union which should have lasted until death, we find the sole cause in the unfounded suspicions of the husband, and in his unjustifiable reproaches and aspersions of his wife, it would be withholding that indulgence which human laws owe to human infirmity, to say that the law requiring her under all circumstances, to pursue the course of obedience and affection, allowed of no excuse for the ebulitions of resentment on her part, under whatever provocation. And to say further, that as these inexcusable ebulitions on her part necessarily tended to widen the breach and to inflame the resentment of her husband, therefore she and not he should be held liable for scenes of altercation and violence, and ultimate separation which ensued, would not only evince an undue partiality to the stronger sex, but would pervert the authority given to the husband into a license for oppression, and the obedience imposed upon the wife, into a sentence of abject submission.

If Mrs. Mayhugh, though innocent, had by any impropriety or imprudence of conduct, given even slight cause for the suspicions or jealousy of her husband, it would have been difficult to excuse the omission of every reasonable effort on her part to soothe his excitement and remove its cause. But there is no pretence furnished, either in the pleadings or the proof, that there was in fact any such cause, either in any particular act, or in the

MAYHUGH
vs
MAYHUGH.

band and wife' in order to determine the right of the wife to separate from the husband and claim alimony, the Court must look as well to the provocation on the one hand as the reciprocal duties of husband and wife, to each other on the other.

MAYHUGH
*vs*
MAYHUGH.

general conduct of the wife. All the witnesses place her above suspicion. And her husband while in his answers he seems studiously to abstain from avowing a change in his opinion and from retracting his charges, does not insinuate that there was any ground for making them. We are compelled to the conclusion that his suspicions and jealousy, were the mere results of imagination, under the effects of some delusion or hallucination of mind, or under the effects of intoxication, to which there is some obscure allusion. And although it might have been the duty of the wife, under all circumstances, to bear patiently the charges, and to endeavor to remove the suspicions of her husband, groundless as they were, we cannot say that she did not forbear as long as forbearance was possible to her nature, or that her retaliatory language at length resorted to, was either wholly inexcusable under the circumstances, or that they formed a justification of the subsequent conduct of her husband, who was first guilty of the gross violation of marital duty, from which followed naturally, if not properly, all the consequences which actually characterize the case.

We are of opinion, therefore, that although Mrs. Mayhugh may not be blameless in every part of the controversy, she has not forfeited the rights of a wife, and is still entitled not only to a support from him, but to a return of his affection and confidence. And although we may think that some parts of her conduct during the progress of the controversy were unwise, and in that sense imprudent, yet we are of opinion that the history of the case as gathered from the testimony and adverted to in this opinion, is such as in the language used in *Finley* vs *Finley*, (9 *Dana*,) "shows such habitual persecution on the part of the husband, as to render the bonds of matrimony to a prudent woman, the bonds of wretchedness and oppression." Under this principle, she was entitled to alimony when she filed her bill. And we do not concur with the counsel, in the position so earnestly maintained, that the imperfect compromise which afterwards occurred, has essentially changed her rights. That arrangement was rather a compromise of the suit than of the difficulty which had produced the separation. And

*Marginal note:* When the husband's conduct towards the wife is such an habitual course of persecution as to render the bands of matrimony a place of wretchedness & degradation, she may leave him and have alimony.

although it provided on the one side for a dismissal of the suit, it secured nothing more on the other than a contribution for one year to the support of the wife, leaving her future support either wholly unprovided for, or else to rest in the will of the husband or the coersion of the law; and what is still more to the purpose, not implying reconciliation, nor producing or providing for cohabitation. The salutary principle, that reconciliation and cohabitation should bar all further complaint for previous grievances, does not apply to the case. There was neither reconciliation nor cohabitation for the time being, nor even a definite agreement securing them in future. The promise or representation of Mayhugh, that he would in the course of the year purchase a farm in Bourbon, or elsewhere, that would be acceptable to his wife, though it was an acknowledgement of his obligation to support her, and evinced a disposition at the time to do it in a manner which would be agreeable to her, left him at liberty to do as he pleased on the subject, as he said afterwards he would do. And when within a few days he notified his wife and son to quit his Mason farm at the end of the year, for which he had agreed to settle the rent for them, it was but a prudent precaution on the part of Mrs. Mayhugh, to file her amended bill, repudiating her order to dismiss the suit, and praying that it might progress. He says in answer to the amended bill, that the notice to quit was intended merely to put it in his power to deliver possession of the Mason farm ,under a sale which would be necessary to enable him to purchase another as he had promised. But the amended bill did not prevent him from consummating his purpose, and he has never done it. And we have again to say, that it is perhaps unfortunate that he should have attempted to operate upon his wife by coersion rather than by means better suited to convince her of his affection and respect. This notice to quit, given without explanation, and under circumstances evincing neither affection nor confidence, implies that he felt bound by the compromise only so far as he had undertaken in writing to settle the year's rent, and would suffice, if there were nothing else, to prove that

MAYHUGH
*vs*
MAYHUGH.

The court should retain power to enlarge or diminish decrees for alimony, as the circumstances of the husband may indicate to be proper.

there was no reconciliation, no return of affection and confidence, no agreement or prospect of reunion.

Under all the circumstances of the case, we are of opinion, that Mrs. Mayhugh was entitled to a decree for alimony to such an amount, as without being excessive, in view of her husband's resources, would yet insure her a comfortable support accordant with her position in society, and independently of her husband's will or discretion. And although the annual value of his estate is not clearly shown, and we were at first disposed to think the annuity of $300, decreed to the wife, in addition to the property sent with her on the separation, was probably too much, yet as two of the children whose tender age may require a mother's care, have by a revocable order of the Court, been left in her custody, and as the others appear to have chosen a residence with her, which has been allowed by the father, and the continuance of which will impose some burthen upon her, though the husband is not relieved from the duty of supporting them, and as the Court retains the power of changing the sum to be annually paid, and may and should exercise it not only in case of a change of circumstances, but even upon satisfactory proof that the amount is unreasonably oppressive upon the husband, we have concluded that there is no sufficient ground for disturbing the decree in this respect. We find an additional reason for permitting the disposition made by the Chancellor to stand, at least for the present, in the opinion that whenever the husband shall return to such a state of mind as will give reasonable promise of security and comfort in a re-union with him, he will probably have it in his power to relieve himself from the burthen imposed by the decree, and to re-assume the right of maintaining his family according to his own discretion. We are not satisfied that any circumstances as yet existing, would authorize a reduction of the alimony as a means of coercing the wife to a re-union.

Wherefore, the decree is affirmed.

*Cord* for plaintiff; *Beatty and Payne* for defendant.