# Munter & Faber *v.* Linn.

# Linn *v.* Munter & Faber.

*Bill in Equity to ascertain Mortgage Debt, and for Foreclosure.*

1. *Usury; how must be set up.*—One who has made usurious payments on a debt, can not obtain credits therefor, unless he distinctly and correctly sets forth in the pleadings, the terms and nature of the usurious agreement, and the amounts of the payments.

2. *Same; what allegations not sufficient to put in issue.*—A mortgagor who, upon dispute with the mortgagee as to the amount due, files his bill to ascertain the mortgage indebtedness, and for a sale of the property, if necessary for its payment—does not by the general allegation that "from time to time he has made various payments" on the mortgage debt, which reduce it below the amount the mortgagee claims, put in issue the right to credits for payments, beyond eight per cent. per annum, made to the mortgagee not as credits on the debt, but for forbearance, and to induce him not to foreclose, after the debt matured.

3. *Same.*—Nor in such a case, is the defect of the bill cured, by a consent decree directing the register "to state on account of the amount due the

[Munter & Faber v. Linn; Linn v. Munter & Faber.]

mortgagee upon the mortgage debt, allowing him eight per cent. interest upon the debt after maturity, and deducting therefrom all sums of money paid the mortgagee at the date of the several payments." Such decree, when tested and construed with reference to the pleadings, relates only to payments made as such, on the debt, and not to usurious exactions paid merely for forbearance.

4. *Amendment; when properly disallowed.*—After final decree settling the equities, a party is not entitled as matter of right to have an amendment allowed, which authorizes the introduction of proof effecting a different result; the chancellor may decline at that stage of the proceedings, to allow it.

5. *Attorney's fees; when may be included in mortgage.*—A stipulation in the mortgage, that the mortgagor, in addition to legal interest, shall pay to the mortgagee attorney's fees incurred in collecting the debt, will not render the agreement usurious; but a reasonable amount only can be collected, though a larger sum or per cent. is agreed on.

APPEAL from Montgomery Chancery Court.

Heard before Hon. H. AUSTILL.

The appellants, Marcus Munter and Henry Faber, composing the firm of Munter & Faber, filed this bill, in August, 1875, against the appellee, Charles Linn. The bill states in substance, that in January, 1870, appellants were indebted to Linn, mainly on account of the purchase of a store-house and lot in the city of Montgomery, and in payment of a balance due executed three promissory notes for $8,500 each, due respectively on the first day of January, in the years, 1871, 1872 and 1873, secured by mortgage on said property, with power of sale, &c.; that " orators from time to time after the date of said mortgage, made payments to said Linn on the said debt, until at this time the balance due said Linn, does not exceed the sum of from four thousand to forty-five hundred dollars, while the mortgaged property is worth at least twenty-five thousand dollars, but said Linn claims that there is due him the sum of sixty-six hundred and fifty eight dollars, and under the powers contained in the mortgage, is proceeding to sell, and has advertised the property for sale; that complainants are ready and willing to pay the true amount which may be ascertained due ; that the mortgaged property should, upon the ascertainment of the real balance due, be sold, if necessary, for the payment thereof." They further aver their willingness that a receiver be appointed to take charge of the property and receive the rents. The prayer of the bill is for an injunction, restraining Linn from selling the property, and that it be referred to the register to take and state an account between the parties, ascertaining the balance, if any, due by complainants, and that the property be sold to pay such balance, unless paid within a reasonable time, to be fixed by the court.

[Munter & Faber v. Linn ; Linn v. Munter & Faber.]

Linn answered, admitting most of the allegations, but denying that he was claiming more than was due, and averring and insisting that there was due at the time of his proposed sale, the sum of $6,658.56. By agreement of the complainants, his answer was taken as a cross-bill, asking for a foreclosure of the mortgage.

At the May term, 1876, " by consent of parties in open court," the chancellor decreed that the register " proceed to state an account of the amount due to respondent, Linn, upon his mortgage debt, allowing him eight per cent. interest upon his debt, after maturity thereof, and deducting therefrom all sums of money paid to said Linn at the date of the several payments, and that he report at the present term. All other questions are reserved until the coming in of the report."

A reference was had, and considerable testimony taken as to the number, and amount of payments on the mortgage debt. The testimony, though conflicting, showed that Munter & Faber had, at various times after the debt matured, paid Linn certain sums of money, not as credits on the debt, but to induce him not to foreclose, and for forbearance, &c., when he was about to sell. Linn, however, claimed that the items were to cover his expenses in coming to Montgomery to confer with them about the matter, and for counsel fees, and advertisements, &c.

The register allowed most of these payments, though not all of them, and disallowed one item of credit claimed by complainants, and, upon the account as thus stated, found that the balance due Linn, amounted to a little over five thousand dollars. Both parties excepted to the report. Linn's exception, as to the credits allowed, was on the ground that they were " not established by the evidence before the register."

The court made a decree, which, after disallowing complainants' exception, proceeds as follows : " The main question raised by the exceptions of Linn to the report is, whether the register erred in allowing credits upon the mortgage debt on account of various sums paid by complainants to Linn as usurious interest. The court is of opinion that complainants did pay the several items described as usurious interest, and, while the testimony before the register is conflicting as to whether complainants were allowed credit for such items when the third note was paid, the court is of opinion that the register was correct in finding that such credits were not allowed. It was not the intention of the parties that such payments should be received as payments

upon the mortgage debt; but, the question is, can complainants get the benefit of such payments under the order of reference, and under the pleadings in the cause? The original bill does not raise the question of usury. If complainants had set up such a plea, of course they would have been bound to offer the principal sum due, with lawful interest— else, the bill would have been demurrable. The court is of opinion that unless the plea of usury is clearly presented by the pleader, he has no right to raise it before the register on a reference such as we are now considering. The second and third exceptions of Linn are sustained. His other exceptions are overruled. It is therefore ordered that the report of the register be vacated and set aside. The matter is again referred to the register to ascertain and report the amount yet due Charles Linn. The register will not give credit to complainants in the original bill, on account of the sums paid as extra or usurious interest."

The complainants, after due notice, asked leave to file an amendment, which they then offered. This proposed amendment avers that they paid Linn at various times, large sums of usurious interest, to-wit, $3,000, to induce him not to foreclose, and for forbearance at different times, in excess of eight per cent. interest, which said Linn refuses to allow as a credit; that complainants "are willing to pay Linn, and hereby offer to pay said Linn his mortgage debt and legal interest, but pray to be allowed credit for all payments without legal consideration, or in excess of eight per cent. interest." The chancellor refused to allow the amendment.

The register made another report, in obedience to this decree, ascertaining and reporting the balance due Linn at $7,659.72. The chancellor confirmed this report, and decreed a sale, &c., and Munter & Faber appeal. They now assign as error the sustaining of Linn's exceptions to the first report of the register, the decree ordering another reference; the confirmation of that decree, and the refusal to allow the proposed amendment.

The mortgage contains among other provisions, the following: "And in case it should become necessary to institute legal proceedings for the recovery of the amount of said notes or any part thereof, it is further agreed, and the said Marcus Munter and Henry E. Faber, hereby covenant to pay the fees of attorney-at-law, who may be employed for that purpose—such fee to be ten per cent. of the amount sued for and recovered."

On the last reference to ascertain what was due Linn, no

proof was made as to fees of attorney, and nothing reported by the register on that account. This report was not excepted to by Linn, but after its confirmation, he moved the chancellor to direct a reference, to ascertain the amount due on that account, but his motion was overruled.

Linn also appealed, and made a cross assignment of error by consent under the rules, asssigning as error, the failure and refusal of the court to allow compensation for attorney's fees.

ELMORE & GUNTER, and WATTS & SONS, for Munter & Faber.

D. S. TROY, *contra*.

MANNING, J.—Appellants executed to appellee, Charles Linn, a mortgage of real estate in Montgomery, with a power of sale to secure the payment of a debt to him for borrowed money. And he being about to sell the property to pay a balance due, they filed their bill praying an injunction to restrain him from doing so, and that an account be taken to ascertain the amount really due,—and that a sale of the property to pay it, be made under the direction and control of the court, complainants alleging that they "from time to time after the date of said mortgage made payments to the said Linn on said debt, until at this time the balance due to said Linn does not exceed the sum of from $4,000 to $4,500," while he is claiming of them, and about to sell the property to raise some $2,000 more. The latter allegations the defendant denied: And it being agreed that his answer should be regarded as also a cross-bill setting up the mortgage and praying its foreclosure or a sale under it, to pay the debt, a decree by consent was entered, referring it to the register "to state an account of the amount due to respondent, Linn, upon his mortgage debt, allowing him eight per cent. interest upon his debt after maturity thereof, and deducting therefrom all sums of money paid to the said Linn at the date of the several payments."

The sums which, it is contended, ought to have been, but were not credited upon the debt, had been voluntarily paid upon agreements entered into from time to time, according to the testimony, by way of *bonus*, or extra interest for indulgence in allowing delay in payment after the maturity of the debt, and not for the purpose of reducing it. It was, in fact, usury illegally charged and taken beyond the legal in

[Munter & Faber v. Linn; Linn v. Munter & Faber.]

terest, for the forbearance of the creditor to enforce payment of the debt when it became due.—*Matlock v. Mallory*, 19 Ala. 694; *Ferrier v. Scott's Administrator, &c.*, 17 Iowa, 578. But no averment was made in the bill of any such usurious dealing or agreements; nor was any statement made or particulars given of the sums of money so paid and received; nor was there any prayer that the payments thus made for one purpose should by decree of the court be appropriated to another.

The cases in which a debtor seeks to have moneys which have been usuriously given and accepted, applied as payments upon a debt to his creditor, are generally those, in which he, the debtor, is sued. And these cases most frequently appear in a court of equity, when the suit is brought by a mortgagee against his debtor for a foreclosure or sale under his mortgage, to pay the mortgage debt. No rules of proceeding are better established than that when this is done, the defendant debtor can not avail himself of sums he has paid for usury, as credits upon the debt, unless he has by his pleading, properly and perspicuously charged his creditors with having usuriously exacted or taken them, and set this up as *pro tanto* defense. The general rule, as stated in Tyler on Usuary (p. 458) is, that the debtor " must in his answer or plea, both at law and in equity, set up the usury specifically, stating distinctly and correctly the terms of the usurious agreement and the amount of the usurious premium." And the pleader is cautioned to make this defense, " bearing in mind always, that the courts are more rigid and technical in their practice in cases of usury, than in ordinary cases of equity jurisdiction." This has proceeded in a large degree from a prejudice against this defense as " unconscientious." And some judges have perhaps, given more weight to this prejudice than should be allowed to it, by those whose duty it is to dispense justice according to law, with an equal hand. But however this may be, the rule that usury must be specifically and particularly set up by pleading, is too well established to be disregarded.—*Manning v. Tyler*, 21 N. Y. 567; *N. O. Gas Co. v. Dudley*, 8 Paige, 452; *Taylor v. Morris*, 22 N. J. Eq. 606; see, also, *Duckworth v. Duckworth*, 35 Ala. 70.

Now, appellants, who filed the bill under consideration, really occupy a position not so favorable as that of defendants. Having delivered to their creditor a mortgage of their property, with a power to sell it, he was proceeding legally by execution of this power to obtain satisfaction of the debt, when resisting him, they invoke the aid of the chancellor. Of course

their bill should set forth the grievances in respect of which they claim relief. But since they make no complaint of any usurious dealing, and do not ask, or show any reason why they should ask, that any executed transaction between them and their debtor be set aside, all that the court could do, or that they pray it should do, is, to have the payments they have made to defendant upon the debt duly credited, and the property sold under its direction, to pay the balance proved to be due.

It is argued though by counsel for appellants, that whatever might have been the defect in their bill, it is obviated by the consent decree of reference which instructs the register in taking the account, to allow to appellee legal interest from the maturity of the debt, and to deduct therefrom all sums of money paid to the said Linn, at the dates of the several payments. But this means only payments that have been made as such upon the debt. The decree must be understood as founded upon and limited by the pleadings. And there being no complaint in them that appellants had paid to their creditor, upon contracts from time to time made with him for his forbearance, amounts beyond those which by law he was entitled to demand, nor any prayer to be released by a decree of the court from such executed contracts, and to have the moneys so used appropriated as credits upon the debt, the register was not at liberty to undo the past transactions of the parties, and make that application of such moneys. They were not the payments upon the debt which he was authorized to take into account in ascertaining the balance remaining unpaid.

The amendment offered to the bill, if sufficient under the rule in its averments and specifications, in our opinion, came too late to entitle complainants to have it allowed as a matter of right. On a former day of the term, the chancellor had decided the equities of the case made by the pleadings and evidence, when he, a second time, referred it to the register to take and state the account, and in doing so, instructed that officer not to give credit to complainants in the original bill for the sums paid as extra or usurious interest. The questions in the case, to which the proposed amendment related, had been decided by the chancellor, after which it was within his discretion to set aside that decision and permit the amendment, or to refuse to do so.

We find no error against these appellants, and the decree as against them must be affirmed.

[Munter & Faber v. Linn; Linn v. Munter & Faber.]

NOTE BY REPORTER.—At a subsequent day of the term, Messrs. Gunter & Blakey, and Watts & Sons, petitioned for a rehearing on behalf of Munter & Faber, and filed in support thereof, the following argument:

It is evident that there is no *discretion* in the chancellor to refuse an amendment, proper in itself, if it is proposed before *final decree.*—Code, § 5790. What is meant by *final decree* in this statute? The decree rendered by *consent* of the parties, was certainly not a *final decree in the cause.* Was it such a *final* decree as prevented the complainants from the *right* of amendment? What sort of a decree is final so as to cut off the *right* of amendment, and leave the matter in the *discretion* of the chancellor? It is decided that a decree is *final* for the purpose of allowing an appeal to the Supreme Court, when it settles "all the equities between the parties."—1 Brick. Dig. 89, § 85; see, also, 32 Ala. 13; 24 Ala. 441.

Now, under this consent decree, were *all* the equities between the parties settled? The main equity in the case was in the *state of accounts* between the parties. The reference to the register was necessary to enable the chancellor to determine and decree the *equities between the parties.* This decree of reference determined nothing, *except* that the register should take an account; that he should, in taking the account, allow Linn interest on his debt, at eight per cent., after the maturity thereof; and that all sums of money paid should be credited as of the date of the respective payments. *All other questions were expressly reserved.*

There could not have been any decree settling *all* the equities between the parties, until the report was made and confirmed. Before this was done the amendment was offered. The amendment, in its allegations, was certainly a proper one, and the only possible objection to its allowance was the *time* at which it was offered. There having been no decree settling all the equities, the amendment should have been allowed as *matter of right,* and there was no discretion in the chancellor to refuse it.—See *King v. Avery,* 37 Ala. 169.

Was there any other decree, before the amendment was offered, which can be considered such a final decree? The decree of the chancellor on the exceptions to the report can not be considered final. The case was submitted to him on the exceptions alone. Under such submission, he had no right to settle anything except the exceptions to the report of the register. *The case was never submitted to the chancellor*

[Munter & Faber v. Linn ; Linn v. Munter & Faber.]

*for a decree on the equities of the case until after the amendment was proposed and rejected.* So that the sole question on this branch of the case is, was the decree rendered *by consent* in May, 1876, a *final* decree within the meaning of the statute of amendment? Does this decree settle *all the equities* involved in the case? The state of the accounts between the mortgagors and the mortgagee constituted the basis on which the equity of the bill rested. How could the chancellor settle *this* equity, except through and on the facts reported by the register? Until this report was made, he had nothing before him on which he could make a decree settling the equities between the parties. *The matter of dispute between the parties was the amount due on the mortgage debt.* This dispute could not be settled except by taking an account, and thus ascertaining the truth of the matter. Now, if it be said that the part of the decree which directed the register, in taking the account, to allow Linn eight per cent. interest on the mortgage debt, after maturity, settled one of the equities, still there were other equities, which could only be solved on the coming in of the report of the register.

If it be said that the portion of this decree which declared that, in taking the account, the register should deduct all sums of money paid to Linn at the date of the respective payments, settled another equity, still there was left to be settled the equity which arose from the state of the accounts, as developed by the report of the register.

There are but three things settled by this decree :—*first,* that an account should be taken by the register; *second,* that he should allow Linn eight per cent. interest on the mortgage debt from maturity thereof; and *third,* that Munter & Faber should be allowed all payments as of the dates thereof. "All other questions are reserved until the coming in of the report," is the express language of the decree.

This would seem to exclude, expressly, all idea that it was to be, or could be, considered a final decree, settling "all the equities between the parties." And thus it is demonstrated that it is not such a final decree as cuts off the *right* of amendment. If, therefore, there was any necessity for the amendment, it was in time, and ought to have been allowed, by the imperative injunctions of the statute.

There are some further matters in this case, to which we respectfully call the court's attention :

The decree of the 17th day of May, 1876, was by *consent,* the meaning of which we take is, that its *terms* were fixed

[Munter & Faber v. Linn; Linn v. Munter & Faber.]

by the *convention* of the parties. This convention of the agreement of the litigants was made, too, about their own matters, concerning which they should be presumed to be well informed, and therefore to have understood *their own purposes and intentions.*

The facts show that these parties *each* construed the language of the decree in one and the same way, and acted on that construction, and if the words might well be so construed, what *right* has the court, of its own motion and without notice of such purpose, to place a totally different construction on it, and thus in effect to make a decree of its own, in lieu of the real consent decree? Linn's objection to the allowance of the credits, was because they were not *established by the proof*—not because it was without the scope of the reference. All the acts of the parties show that they construed the decree, as authorizing an inquiry into *all* payments.

Now, the next question is, does the construction put on the consent decree by the parties do violence either to the grammatical or legal import of the *words* of that decree?

Could not "sums of money" paid to Linn as interest in excess of eight per cent. be as well included under the words "sums of money paid to the said Linn," as "sums of money" paid to him as interest at or under eight per cent.? The things to be deducted from Linn's debt were "sums of money paid to the said Linn," and money received by him from the complainants as *interest* on their debt to him is certainly within the *possible* meaning of the words.

And, further, can we not even maintain that the most *probable* meaning of the *words* of the decree is the same as that put upon them by the parties and the register, viz., that the true direction of the decree to the register was to take an account between the parties in which the defendant, Linn, should only receive legal interest, and in which the complainants should have credit for all payments, whether made to cancel legal or usurious interest?

It should be recollected that the decree was made in a cause in which the controversy between the parties was concerning the allowance or disallowance of *credits* claimed by complainants and denied by Linn; that the only credits about which there was any difference were the usury payments; and that the parties understood and agreed that the real questions involved should be considered and determined without special pleading; for the defendant, by agreement, was to have the benefit of his answer as a cross bill. Un-

der these circumstances, to save time, perhaps, it is agreed that the register shall report the state of accounts between the parties, and it is expressly provided that Linn shall have eight per cent. This, under the circumstances, can only be construed as meaning that he should not have more than eight per cent. on his debt.

Moreover, usurious payments are payments on the debt, *in every sense of the word*, as much as payments of legal interest are. It is the agreement, express or implied, of the parties which makes the corpus of a debt bear eight per cent. interest—and thus this per cent. becomes a part of the debt itself. The same agreement, though in this case it must be express, makes any *extra* interest beyond eight per cent. also a part of *the debt*. And when paid, it diminishes the debt that much, since the debt by consent was increased by the *extra* interest before the payment was made.

The payments made, then, in the way of *extra* or usurious interest, are in every sense of the words payments on *the debt*, and the parties made and received them as such; but, as stated above, the debt itself was increased by the agreement to pay the *extra* interest.

The decree in this case, while carefully providing that the payments of money to the defendants should be allowed, as carefully provides that the debt of the defendants shall not be increased by usury.

But, it is said that the pleadings, as actually filed, did not authorize Munter & Faber to insist on usury. Did Munter & Faber, in fact, insist on usury?

There was no usury in the notes provided for by the mortgage, and the mortgage itself expressly provides that each one of the notes shall bear eight per cent. interest after maturity. The expressions of this rate of interest *after maturity* is equivalent to a contract between the parties that *no more* or *greater* interest should be exacted by Linn on the mortgage debt, *after maturity*, for any "forbearance" or delay in collecting or foreclosing the mortgage; and if Linn, after the maturity of the mortgage debt, required a greater sum than the legal rate for any "forbearance," he not only violated his *contract*, but he violated the *law* against usury.

Now, under the decree of the 17th of May, 1876, the complainants, before the register, simply introduced evidence of their payments to Linn on the mortgage debt. They had a right, under the decree and under the law, to have all payments on account of the mortgage debt or on all contracts

for forbearance in collecting it, deducted from the mortgage debt.

A payment, intended as a payment of usurious interest, made before the payment of the principal, is to be considered as made on account of the debt for which the debtor is legally liable. The law regards all agreements made by a debtor not to claim usury, which he has agreed to pay, as made under coercion of the creditor, and when paid, the payments must be credited on the amount the *law allows the creditor to collect.* The law applies the payments to the debt, although they may be made on a usurious agreement for forbearance.—*Booker v. Gregory,* 7 B. Mon. 430; *Farwell v. Meyer,* 35 Ill. 40; *Hunter & Hatch,* 45 Ill. 184; *Jones v. Bond,* 8 Smedes & M. 368; *Goodhue v. Palmer,* 13 Ind. 457; *Knapp v. Briggs,* 2 Allen, 551; *McAllister v. Jermon,* 32 Miss. 142; *Threadgill v. Timberlake,* 2 Head, 396; *Davis v. Converse,* 35 Vt. 503; *Browning v. Thompson,* 13 B. Mon. 387; *Nichols & Bliss v. Bellows,* 22 Vt. 581; *Shroeppell v. Corning,* 4 Denio, 236; *Dey v. Dunham,* J. Johns Ch. 191;

After a transaction has been in part closed, but the same is so far open that the debt is unpaid, a court of chancery, in stating the account, will allow a credit for usurious interest previously paid.—See *Parmelee v. Lawrence,* 44 Ill. 404; *Ward v. Sharpe,* 15 Vt. 118; 35 Vt. 503; *Johnson v. Thompson,* 28 Ill. 352; *Ware v. Bennett,* 18 Tex. 794; *Farwell v. Meyer,* 35 Ill. 49; *Booker v. Gregory,* 7 B. Mon. 430; *Fox v. Taliaferro,* 4 Munt. (Va.) 243; *Cole v. Hills,* 44 N. H. 227; *Gill v. Rice,* 13 Wis. 549; ib. 589.

In *Minnott & Sawyer,* 8 Allen, 78, it was held that the payment of usurious interest, under a verbal contract, could not be deducted in a suit on the note, but it was so held because the statute of Massachusetts provided a different remedy.

Our statute expressly declares, "that if any interest has been paid, the same must be deducted from the principal."

Now, before the register, the complainants, Munter & Faber, proved certain payments not credited by Linn on the mortgage debt. They had the right to make such proof and to have these payments credited, unless there is some valid reason why they should not; for they come under the express directions of the chancellor to the register. Linn, however, objects to the allowance of these payments, because, as he says, *they* were made to him for interest over and above the legal interest, exacted by him for and on account of "forbearance" and time given Munter & Faber in col-

lecting the mortgage debt and in foreclosing the mortgage. Then, it is not Munter & Faber who plead usury; but it is Linn, who sets up the usury against the allowance of these payments as credits on the mortgage debt. But for Linn's suggestion of the usurious contract under which these payments were made they must have been applied to the mortgage debt. They were made on account of the mortgage indebtedness due by Munter & Faber to Linn. In order to avoid the effect the law attaches to these payments, viz., the reduction of the mortgage debt to the extent of the payments, Linn says *"these payments were made to me,* in addition to the legal interest, in consideration of time, 'forbearance' given to them, and to prevent me from selling the mortgaged property for the payment of my debt." Is this any legal reason for not allowing the payments as credits on the mortgage debt? The register allowed these payments. Suppose Linn had sued Munter & Faber on their notes in a court of law, and Munter & Faber had simply pleaded *payment,* or had offered evidence of payment under the general issue, as they might have done,—it would not have been necessary, in a plea, to aver that these payments had been made under a usurious contract, setting forth specifically the times and terms; a simple plea of payment would have been good. Could Linn have replied, either by formal replication or by evidence, that such payments were made to him for *interest* over the legal rate, in consideration of "forbearance," and that they ought not to be allowed as payments on the mortgage debt? Could he plead or set up his own violation of the law to avoid the effect which the law attached to the payments made? The agreement thus made to delay the collection—to forbear—was certainly *usurious.*—See *Mallory v. Matlock,* 19 Ala. 694.

"Were such agreements to receive the sanction of the law, the statues against usury would be, in many cases, perhaps the greatest number, utterly impotent to effect the end proposed." "It has long been settled that cases of usury are not confined to precise loans of money, but they extend to cases where the relation of debtor and creditor exits." *Mallory v. Matlock, supra,* page 697. Did not the relation of debtor and creditor exist between these parties at the time this agreement for "forbearance" was made? Were not the amounts received in payment as a consideration for delay or forbearance in collecting the mortgage debt? Undoubtedly. But it is unnecessary to argue this further, for it is conceded in the opinion delivered in this case that these payments

were made under a usurious contract.   This being conceded, the statute declares that these payments shall be applied to the principal debt, disregarding the usurious contract.

It must not be overlooked that the notes covered by the mortgage were not founded on any usurious contract, and there was no usurious interest included in them.   If Munter & Faber had been sued on them, they could not have pleaded usury; and in such cases, it would not have been necessary for them to plead usury in order to have the benefit of payments made on the mortgage debt.

MANNING, J.—However correct in regard to several propositions discussed in it the argument for a rehearing of this cause may be, yet it does not, we think, meet and answer the propositions relating to the pleadings and manner in which appellants presented their case, upon which the opinion and decision of this court were founded.

It is because the bill does not refer to and assail the agreements between the parties for postponing foreclosure under the mortgage, and does not claim that the *extra* sums paid from time to time, in consideration of such postponements, should be applied as payments upon the mortgage debt, that those matters were held by us to be not put in issue.   And in respect to the consent decree, as it also did not specify what payments were to be credited on the mortgage debt, we construed it by reference to the bill upon which it was based, as authorizing those payments only to be credited, which were made and received as payments upon that debt, and not those which had been made in fulfillment of the subsequent collateral usurious contracts for its extension, not mentioned in the pleadings.

In regard to the proposed amendment of the bill, counsel for appellant insist that it did not come too late.   Clearly, after the second decree of reference was made, there remained no further question to be settled for the determination of the rights of the parties.   Both the bill filed by appellants, and the answer of their creditor, Linn, admitted and affirmed the existence of the debt of the former to him, and of the mortgage to secure it; and in their bill the debtors themselves prayed, and their creditor consented that the amount of the debt be ascertained, and the mortgaged property sold to pay it, under the direction of the court. In respect to these matters, both sides concurred.   There was no question of equity open, except that which related to the payments that should be credited.   And that was set-

tled when the chancellor in his second decree of reference, said: "The register will not give credit to complainants in the original bill, on account of the sums paid as extra or usurious interest," which were the sums paid from time to time, upon the subsequent agreements for the extension of the term of credit and foreclosure. Yet it was one day after this determination of that matter, and after the register had made his final report under that order—when nothing remained for the chancellor to do, but confirm the report and order the sale—that the application was made so to amend the bill, as to throw open the cause for investigation again, and upon other issues, from the beginning. Whether this should then be done was, we think, a question which the chancellor was entitled to decide according to his sound discretion.

Application for rehearing denied.

The following opinion was delivered on the cross-assignment of error made by Linn.

MANNING, J.—In the cross-appeal of Linn in this cause, it is assigned as error, that he was not allowed his attorney's fees, according to the agreement that "if it should be necessary to institute legal proceedings for the recovery of the amount of the notes," Munter & Faber should pay the attorney who might be employed for the purpose, his fees; such fees to be ten per cent. on the amount sued for and recovered."

Except in Kentucky, where it is ruled differently, it has been generally held that an agreement to pay the reasonable attorney's fees, to which a lender of money would be put, if he should have to sue for it, in addition to the legal interest, is not usurious. The creditor, though, would not be permitted to make a further profit to himself by stipulating for a larger sum or per cent. than the reasonable fees he would have to pay. In the present case, the compensation of the lawyer is put at ten per cent. The contract to pay it was made with Linn. No attorney was a party to it, or is a party to this cause. The money was payable to Linn for his reimbursement of the sum he had paid, or would have to pay to his attorney, and constituted a part of what he was entitled to recover from his debtors, the amount of which the register was ordered to ascertain and report. And since it was not proved and included in the amount he reported, and the report was confirmed without any exception to it

made by Linn, he is thereby concluded.  The motion afterwards made when the cause was about to be finally disposed of, was addressed to the sound discretion of the chancellor.

Let the decree of the chancellor be affirmed.