## POWELL vs. THE CENTRAL PLANK ROAD CO.

24  441
143  361
143  362

1. The appeals spoken of in section 3019 and 3020 of the Code, are appeals from final judgments or decrees, and not from those which are interlocutory only.
2. The register has power, under the Code, to grant an appeal from an interlocutory order of the Chancellor dissolving an injunction in vacation (LIGON, J., *dissenting*).
3. A mail-contractor cannot come in equity to enforce a contract with a plank road company, for the transportation of the mail over its road, unless he shows by his bill that a court of law could not compensate him in damages for the breach of the contract.

APPEAL from the Chancery Court of Coosa.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by the appellant, James R. Powell, against the Central Plank Road Company. It alleges, that complainant was a mail-contractor with the United States for the transportation of the mail on the route from Montgomery to Guntersville ; that as such contractor he made a contract with the said company, acting through its agent, for the transportation

29

of the mail over its road, at a stipulated price, from June, 1852, until July, 1854; that said defendant, in violation of its said contract, has prevented complainant's mail coaches from passing over its road, and still continues to do so, whereby complainant has failed to carry said mails as required to do by his contract with the United States; that his injury will be irreparable if said company is allowed thus to violate its contracts; that his stock and stables, under the faith of said contract, have been removed from the old route to said plank road, and all his arrangements made to use said road in the transportation of the mail.

The prayer of the bill is for an injunction, which was granted by [the Hon. Robert Dougherty. On the coming in of the answer, a motion was made before the Chancellor, in vacation, to dissolve the injunction; which motion was sustained, solely on the ground of a want of equity in the bill. No application was made to the Chancellor for an appeal, and for an order retaining the injunction during its pendancy; but the complainant applied to the register for an appeal, which was granted on the 9th of January, 1854, returnable to the June Term of the Supreme Court; and bond was executed as required by the statute. The appellant filed a transcript of the record in the Supreme Court, on the 13th of February, 1854; and on this transcript he now moves the court for a special injunction until his appeal can be heard and determined, if the court should be of opinion that the execution of the appeal bond, of itself, does not restore and retain the injunction pending the appeal.

BELSER, RICE & BARRETT, and WATTS, JUDGE & JACKSON, for appellant, contended, that, inasmuch as the agent of the company had contracted within the sphere of his agency, and the company was not bound at law by the form of the contract, a court of equity, *ex æquo et bono*, would enforce it against the principal (Story on Agency, p. 209, § 162); that this is not the case of a common or ordinary injunction, but is the point in the cause : it is to prevent irreparable injury; to dissolve the injunction, decides the cause (Purnell v. Daniel, 8 Iredell's Eq. R. 9; McBrayer v. Hardin, 7 *ib.* 1).

WHITE & PARSONS, and ELMORE & YANCEY, *contra.*

LIGON, J.—The counsel for the appellant insists, that the execution of the appeal bond in this case, *per se*, restores the injunction which had been dissolved by the chancellor ; and to sustain his position, he relies upon section 3020 of the Code, which is in these words : " When the decree rendered is for the performance of any other act than the payment of money, (except in cases otherwise provided in this code,) the party wishing to supersede the execution of such decree must apply to the chancellor or register, either in term time or vacation, who must direct the amount and condition of the appeal bond." It is insisted, that this section, taken in connection with section 3019, which provides that, " The appeal does not operate as a supersedeas of the judgment, unless bond be given by the appellant, in double the amount of the judgment, payable to the appellee, with sufficient sureties, and with condition to prosecute the appeal to effect, and satisfy such judgment as the Supreme Court may render in the premises," shows conclusively, that the bond for the appeal, executed in this case, must have the effect of superseding the interlocutory decree of the chancellor, and thus restore the injunction dissolved by him.

Such a construction would scarcely be allowable, even if it were proper to consider these sections apart from those which precede them in the same chapter ; but, when taken in connection with sections 3016 and 3018, not a doubt can exist, that the appeals spoken of in sections 3019 and 3020 are appeals from final judgments and decrees, and not from those which are interlocutory only. In this we all concur.

But a question is made, as to the power of the register to grant an appeal from an interlocutory order of the chancellor, dissolving an injunction in vacation. The majority of the court hold, that such a practice is allowable under the Code, inasmuch as, by its provisions, the appeal is a matter of right, and is made to perform the office of both a writ of error and an appeal under our former practice; and, as power is now conferred on the register to grant appeals on decrees final, and as he has authority to make all interlocutory orders except those of granting and dissolving injunctions, and appointing receivers, he has also the power, by implication, to grant appeals from interlocutory orders dissolving injunctions, as provided for by section

2984 of the Code; and consequently the former practice of this court, in respect to such appeals, no longer prevails.

I have been unable to bring my mind to this conclusion, and this for reasons which I will now proceed to state. Under our practice, as it existed before the adoption of the Code, an appeal could only be taken before the chancellor ; but when applied for, it was granted to the party as a matter of right. The codifyers must be presumed to have known this practice, and doubtless were familiar with it. These appeals were allowed by statute, both from final decrees and interlocutory decrees dissolving injunctions. The Code changes this practice, so far as final decrees are concerned, by authorizing the register to grant the appeal, but no further. In cases like the present, no writ of error will lie, or ever has been allowed. The register, therefore, under his former power to grant writs of error, for which an appeal is now substituted, can claim no right to grant appeals in such cases ; and where his power over appeals, as conferred on him by the Code, is adverted to, we find it limited to cases in which final decrees have been rendered, and to these only. The argument to sustain his power in the present case, derived from his power under the Code to grant appeals from *final* decrees, fails to establish it.

I will now examine his power to grant this appeal under the first division of section 621, which confers on him the power " to make all interlocutory orders and decrees between the parties, not affecting the decision of the controversy." It may be here remarked, that this grant of power is not peculiar to the Code. Under the former law, he possessed the same power, conferred almost in the same words (Clay's Digest 349 § 20) ; yet no person ever supposed, that this section was designed to confer on him authority to make orders by which the cause was to be transferred from one court to another; indeed, this power has ever been understood to refer alone to such orders as are necessary to speed the cause in the court below. Both in the Code and in the old law, it is provided, in the same clause which gives the power to make interlocutory orders and decrees, that such orders " shall be subject at all times to the control, direction and supervision of the chancellor ;" and I do not suppose that his power to grant appeals, in those cases in which it is given him, was ever intended to be reviewed, directed, super-

vised, or controlled by the chancellor.    My conclusion is, that
the appeal authorized to be taken in section 2984 of the Code,
should be applied for, and obtained now, as it was under the old
law (Clay's Dig. 357 § 80) ; of which, the provision on this
subject in the Code is, substantially, and in every material part
literally, a copy.    As to the officer who shall grant such
oppeals, the Code, like the former statute, is silent.    We are,
then, left to establish a practice for ourselves, and I am satis-
fied with that laid down in Griffin v. The Branch Bank of
Huntsville, 9 Ala. 201, which requires such appeals to be taken
before the chancellor.    My opinion is, that the record in this
case is not properly in this court, and that we have, as yet, no
jurisdiction over the case ; and for this reason, the motion to
reinstate the injunction, or to grant a temporary one pending
the appeal, should be repudiated.    But as my brethren are of
a different opinion, I will proceed to consider the merits of that
motion.

The chancellor was of opinion, that the bill and amended
bill did not make out a case for relief in a court of equity, and
on this ground dissolved the injunction.    We concur with him,
that upon these bills the jurisdiction of the Court of Chancery
cannot be supported.    It is here contended, that the bill shows
a case of irreparable injury to the plaintiff, unless the Court of
Chancery will interfere to prevent it.    We do not think the
allegations sufficient for that purpose.    It sets out a contract
between the complainant and the defendant, made with the agent
of the latter, by which the former acquires the right, as mail-
contractor on the route from Montgomery to Guntersville, to
transport the mails in four horse post coaches or omnibuses,
over the Central Plank Road, and shows a violation of that
contract on the part of the defendant, resulting in injury and
inconvenience to the complainant.    But we cannot see from the
bill, that a court of law, if appealed to, could not furnish ample
relief.    There is nothing in the bill to negative the idea that the
complainant's contract with the United States to carry the mail
on the route designated, could not be executed by the use of the
dirt road over which the mail had formerly been transported ;
nor does it appear that there is imminent danger, that the
breach of the contract on the part of the defendant will inevita-
bly result in repeated and heavy amercements on the complain-

ant for failing to carry the mails according to his contract with the United States Governmenl, or necessarily cause a forfeiture of that contract. All the injuries complained of may be readily estimated by a jury, and damages, commensurate with them, may be given in the courts of law. We apprehend, no case can be found in which a court of chancery has taken jurisdiction for the purpose of enforcing a contract of this character, when it is clear that a court of law could amply compensate the injured party, in damages, for the breach.

The bill shows an agreement between the parties, perfect in all its parts—requiring no reformation in order to make it speak their intention: it is not defective in form, and expresses all the terms agreed upon. The bill does not allege the insolvency of the defendant, nor show any injury resulting from the breach which could not be compensated in damages, and consequently makes out no case for the interposition of a court of equity.— We think, therefore, that the motion for a temporary injunction, pending the appeal, must be denied.