C. H. WONSON vs. NORMAN F. FENNO & others.

Suffolk. March 18. — Sept. 11, 1880. AMES & LORD, JJ., absent.

The plaintiff bought of a member of a firm shares of stock in a corporation, and took from the firm a power of attorney authorizing him to procure a transfer of the shares on the books of the corporation. The firm had at the time a large number of shares standing to its credit on the books of the corporation. The plaintiff delayed for some months to present his power of attorney to the corporation, and in the mean time the firm sold all of its shares to other persons, who obtained certificates from the corporation. *Held*, that the plaintiff was not entitled in equity, as against a partner who had no knowledge of the transactions, to a decree for the delivery to him of a certificate of the shares of stock, which had risen in value; but was entitled to a decree for the money which he had paid, with interest.

ENDICOTT, J. This is a bill in equity; and it appears by the report of the single justice of this court, before whom the case was heard, that the plaintiff bought of Fenno & Homer, on July 10, 1878, one hundred shares of the Cincinnati, Sandusky and Cleveland Railroad Company, and paid to them $487.50 for the same, and a power of attorney for the transfer of these shares was duly executed to the plaintiff. It also appears that on July 6, 8 and 9, Fenno & Homer sold in like manner to other parties fourteen hundred shares of this stock, and that certificates for those shares were issued to the purchasers by the company between July 12 and August 13 following. On July 11, there were nine hundred shares standing in the name of Fenno & Homer on the books of the company, and other shares were afterwards transferred to them or to Fenno as trustee; and it was expressly found that the plaintiff could have obtained a certificate from the company for his one hundred shares at any time between July 11 and August 13; but he made no application for a certificate until February 1879, at which time no shares were standing in the name of Fenno & Homer.

Soon after July 10, Fenno & Homer dissolved partnership, a settlement was had, and Fenno subsequently left the Commonwealth, being a defaulter; but Homer had no knowledge of the sale of shares to the plaintiff until after the bill was filed, though the money was paid to Fenno by the plaintiff before the dissolution of the firm. Nor did Homer know that the stock account

had been overdrawn, but he settled with Fenno upon such information as he had. Nor does it appear that any of this stock came into his hands upon the settlement, or that the firm or either of its members had any interest in the stock after August 13.

The bill was originally brought against Fenno & Homer and the railroad company, and prayed for specific performance of the contract, on the ground that they fraudulently caused the stock which the plaintiff had purchased to be transferred, in order to prevent its coming into the hands of the plaintiff. The bill also prayed for general relief. No service was had upon Fenno, who, it was alleged, had fled from the Commonwealth. An amendment was afterwards filed, by which the persons to whom Fenno & Homer had sold stock on July 6, 8 and 9, and the assignee in bankruptcy of Fenno, were made parties. All the parties defendant filed answers, and the case was heard upon evidence. Fraud was not found by the presiding judge, and, as there is no report of the evidence, we cannot assume that the transfers after July 11 were made to prevent the plaintiff from obtaining the stock purchased by him. A decree was entered dismissing the bill against all the defendants except Homer, and ordering him to pay the plaintiff the amount of $487.50, with interest and costs. From this decree both parties appeal.

No objection is made before us, by the plaintiff, as to the dismissal of the bill against the other parties; and it only remains to be decided what are the equitable rights of the plaintiff, as between himself and Homer. Nor does he contend that there was fraud in the transaction; but he contends, upon the facts found, that Homer should be compelled to perform the contract, and give him a certificate for one hundred shares. But a court of equity will not decree specific performance, unless, upon all the facts disclosed, it is manifestly just and equitable to do so as between the parties before the court. The plaintiff could have obtained his stock by applying to the company for a certificate at any time within a month of the purchase, but he made no such application until more than six months afterwards. Having thus voluntarily neglected to demand his stock, it would not be equitable to give him the benefit that would accrue from its rise in value. He obtains all he is entitled to by the decree,

which imposes upon Homer the duty of paying what his firm received from the plaintiff in payment for stock never transferred to him on the books of the company.

Nor can the grounds taken by the defendant Homer before us be sustained. Although the firm, by giving a power of attorney to transfer the stock, did all that was necessary to enable the plaintiff to obtain it, if he had used due diligence, yet, by reason of their subsequent acts, the plaintiff failed to get it, and equity requires that Homer should pay back the money received by the firm before its dissolution. The bill should not be dismissed because the plaintiff might recover this sum in an action at law; for a court of equity, while denying the specific relief prayed, may give to a plaintiff the compensation to which he appears to be entitled. See *Milkman* v. *Ordway*, 106 Mass. 232.

The evidence of sales and transfers of this stock to other parties, who were parties to the bill, was competent as showing why the plaintiff did not obtain his stock, and as bearing on the question whether the transactions were fraudulent as against the plaintiff.  *Decree affirmed.*

*J. C. Lane*, for the plaintiff.

*W. W. Carruth & F. A. Dearborn*, for the defendant Homer