# Moses *v.* Scott *et al.*

*Bill in Equity between Stockholders in Private Corporation, for Specific Execution of Agreement to hold and vote Stock in Trust.*

1. *Specific performance of agreement for purchase of personal property.* As a general rule, a court of equity will not decree the specific execution of an executory agreement to purchase personal property, the remedy at law for a breach being adequate; but, in special cases where the reason of the rule does not exist, as in case of heirlooms, family relics, and sometimes stock in a private corporation, specific performance may be decreed.

2. *Agreement among stockholders to hold and vote stock as unit.*—An agreement among several stockholders of a joint stock company, that they will hold their stock in trust, and vote it as a unit in all matters pertaining to the government of the corporation, as determined by a majority of their number, is not *per se* illegal; but, whether a stipulation that the agreement shall continue for a term of several years is not contrary to public policy, and whether, if legal, a court of equity will decree its specific performance, are questions not decided.

3. *Same; stipulation in restraint of alienation.*—A further stipulation in such agreement in general restraint of alienation—as, that the purchaser should not acquire the right to vote, and that any stockholder,

[Moses v. Scott et al.]

desiring to sell, should give the others the refusal of his stock—is condemned by the principles of the common-law, and a court of equity will not enforce it.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. THOMAS COBBS.

BRICKELL & HARRIS, and J. H. NATHAN, for appellants, cited *Nathan v. Tompkins*, 82 Ala. 437; Ang. & Ames on Corp., § 557; 1 Morawetz on Corp., §§ 224, 226; Code, § 1669 *et seq.; Robbins v. Webb*, 68 Ala. 393; s. c., 77 Ala. 176; 1 Whart. Con., §§ 431, 523; Parsons on Con. 746, 448; Story on Ag., § 476; Wharton on Ag., § 95; Cook on Stockholders, § 618; *Brown v. Pacific M. S. Co.*, 5 Blatch. 535; *Faulds v. Yates*, 57 Ill. 416; s. c., 11 Am. Rep. 24; *Barnes v. Brown*, 80 N. Y. 527; *Hawrally v. Brown*, 18 N. J. Eq. 124; 2 Lead. Eq. Cases, Part 2, 1088; Taylor on Corp., § 790; 2 Story Eq., § 717; 5 Waite's Act. & Def. 766.

ROQUEMORE, WHITE & LONG, and KIRK & ALMON, *contra*, cited *Fisher v. Burt*, 35 Hun. 641; 2 Parsons on Con. 748, note (6th Ed.); *Morris Coal Co. v. Barclay Coal Co.*, 68 Penn. 173; 3 Brick. Dig. 361, § 421; Cook on Stockholders, § 641; *Reed v. Jones*, 6 Wis. 689.

STONE, C. J.—In January, 1887, a joint stock company was formed, incorporated and organized, under the general statutes enacted for the purpose, with the corporate name of "The Sheffield & Tuscumbia Street Railway Company." The bill in this case avers that "The object and purpose of the company were the construction, maintenance and operation of street railways in the towns or cities of Sheffield and Tuscumbia, in the county of Colbert in the State of Alabama, and connecting the said towns or cities." The bill further avers, that "The capital stock of said company was and is fifty thousand dollars, divided into one thousand shares, of the value of fifty dollars each." The bill then avers, that on March 3, 1887, the complainant, Moses, John F. Scott and other named stockholders of the corporation entered into a written agreement, subscribed by them severally, by which they bound themselves, and the stock they severally held in the corporation, for the term of three years from the date of the agreement, to the observance of certain stipulations. Among them are the following:

First, that their respective amounts of stock were thereby
39

placed in the hands of Alfred H. Moses, John F. Scott, Joseph H. Nathan and Arthur H. Kellar, as trustees, "with power to vote said stock at all meetings, whether regular, called or special, as they or a majority of them should deem best."

Second, that this agreement should continue for three years, unless rescinded by unanimous consent.

Third, that the vote should be cast as a unit, as three-fourths of the trustees might determine; or, if they failed to agree, as those holding three-fourths of the stock represented might determine.

Fourth, that during the three years the shareholders had the right to sell their stock in whole or in part, but not the power to sell the right to vote it; and during that term, the transferee would only obtain the transferor's right—namely, the right to own, but not to vote the stock.

Fifth, that during the three years, the right of the shareholder to sell his stock was further restricted, as follows: "That in the event any or either of the parties should, at any time during the continuance of the said trust, offer his stock for sale, subject to the conditions of said trust, he should give the refusal to purchase the same to the other parties to the agreement, or to such of them as were willing to buy, at the price offered *bona fide* therefor, and at which he was willing to sell."

The present bill charges that Scott, disregarding the terms of the said agreement, has sold his stock to Tompkins, who purchased with knowledge of the terms under which Scott held it, and that Tompkins claims the right to hold and vote the stock, relieved of the said trust. The bill further avers that Moses is willing, able and prepared to purchase and pay for the stock at the price Tompkins agreed to give for it; that he has made such offer to Scott, and requested to be informed of the price at which he had agreed to sell to Tompkins; but that Scott refused to give the information, and refused to sell him the stock. The object of the bill is to obtain specific execution of the said agreement or trust to have the stock decreed to him, Moses, on his making payment at the price Tompkins agreed to give, and to enjoin Tompkins from voting the stock. There was a preliminary injunction, which, on demurrer, was dissolved. From that order the present appeal is prosecuted.

A very able argument has been submitted to us in maintenance of the injunction. The view we take of the case,

[Moses v. Scott et al.]

renders it unnecessary that we should express our views on several of the points urged.

The general rule is, that chancery will not lend its aid for the enforcement of an executory agreement to purchase personal property. The reason is that the purchaser can obtain other property of like kind, and, in an action for the breach of the contract, a court of law will award him ample compensation for the damage he has sustained.—5 Wait's Act. & Def. 766; 1 Story Eq. Jur. § 718; 3 Pom. Eq. §§ 1401, 1402; *Morris v. Tuscaloosa Manfg. Co.*, 83 Ala. 565. But when the reason on which the rule rests does not exist, the rule does not apply. Where the article contracted to be purchased is one of mere taste, an heirloom, a family relic, or, from some other cause, is not mensurable by a money standard, specific performance is generally decreed, as the only adequate remedy the case is susceptible of. And specific performance of contracts for the purchase of stock is frequently decreed on the same ground.—1 Story Eq. § 719a; 3 Pom. Eq. § 1403; 5 Wait's Act. & Def. 766–7; Taylor on Priv. Corp. § 790; *Duncuft v. Albrecht*, 12 Sim. 189; *Cheale v. Kenward*, 3 DeGex & Jones, 27; *Todd v. Taft*, 7 Allen, 371; *Cushman v. Manfg. Co.*, 76 N. Y. 365; *White v. Schuyler*, 1 Abb. Prac. N. S. 300; *Chater v. San Fr. Ref. Co.* ——, 19 Cal. 220.

We can not say there is any thing *per se* illegal, in an agreement entered into by and between certain stockholders in a joint stock company, by which they promise to vote together as a unit, in all matters pertaining to the government of the corporation. Each member has the clear right to cast his ballot as he pleases, wisely or unwisely, and no other stockholder can control his conduct, or gainsay his discretion. And it can make no difference if several stockholders uniformly vote together, or so vote in obedience to a prior agreement that they will do so. The vote when cast is but the expressed wish of the stockholder, or, at least, must be so regarded, and no other stockholder can be supposed to be injured thereby. To hold otherwise would greatly abridge the voter's right to cast his ballot as he pleases.—Cook on Stocks and Stockholders, § 618; *Faulds v. Yates*, 57 Ill. 416; s. c., 11 Amer. Rep. 24; *Barnes v. Brown*, 80 N. Y. 527; *State ex rel. v. Smith*, 48 Vt. 266; *Woodruff v. Wentworth*, 133 Mass. 309; *Pender v. Lushington*, L. R. 6 Ch. Div. 70.

Whether an agreement to vote as a unit, or, as an agreed majority may dictate, for any given length of time, is a con-

[Moses v. Scott et al.]

tract so binding in its terms that no party to it can withdraw from it, or disregard it, without the consent of his fellows, may be a very different question. Possibly public policy may exert an influence in the solution of this problem. *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Penn. St. 173; *Miss. & Mo. R. R. Co. v. Cromwell*, 91 U. S. 643; *Moon v. Crowder*, 72 Ala. 79; *Danforth v. Phil. & C. M. Railway Co.*, 30 N. J. Eq. 12.

And even if such contract be lawful, and, upon its naked face, exert a continuing force, the grave question comes up, will a court of chancery, in its enlightened discretion, lend its aid in the enforcement of a contract of so doubtful policy? *Fisher v. Bush*, 42 Supr. Ct. N. Y. 641; *Miss. & M. R. R. Co. v. Cromwell*, 91 U. 643.

It is not our intention to answer these questions.

One feature of the agreement we are asked to specifically execute, forces us to deny the relief prayed for. True, the agreement authorizes any member to withdraw from it, and to sell his stock. How withdraw? How sell his stock? Withdrawing does not withdraw his stock. That is tied up in the trust, so called. It does not entitle him to vote his stock. That is bargained away for three full years. If he sells his stock, he does not invest the purchaser with the attendant privilege of voting it, so as to guard and protect the investment. He sells, "subject to the conditions of said trust." That is, he sells the nominal ownership with no voice in its administration—no power for its protection. This is securely lodged in trustees for three years. It requires no argument to show that an offer to sell stock thus hampered could not meet with an inviting bid from an outsider. And no matter how pressing the owner's desire, or necessities for a sale may become, he must first offer it to an outsider for such bid as he can obtain, and even then can not sell to him, until he first "gives the refusal to purchase the same to the other parties to the agreement, or to such of them as are willing to buy, at the price offered *bona fide* therefor." This is a palpable, universal restraint on the alienation of property, which equity not only will not enforce, but is condemned by the principles of the common law.—*Fisher v. Bush*, 42 N. Y. Supr. Ct. 641; *Morris Run Coal Co. v. Barclay Coal Co.*, 68 Penn. St. 173; *Foll's Appeal*, 91 Penn. St. 434; s. c., 36 Amer. Rep. 671; 2 Pars. Contr. *748; *Wonson v. Fenno*, 129 Mass. 405; *People v. Alb. & Susq. R. R. Co.*, 55 Barb. 344

Affirmed.