# Lewman & Co.. *et al. v.* Ogden Bros, *et al.*

*Bill in Equity for Specific Performance of Contract.*

1. *Equitable mortgage; essential features of.*—The essential features of a mortgage, equitable or otherwise, are the existence of a debt due, or to become due, or some contingent liability for which the instrument is intended as a security.

2. *Construction of written instruments, rule as to.*—A cardinal rule to be applied in the construction of written instruments is, that the intention of the parties to it must prevail, and, to ascertain that intention. regard may be had to the nature of the instrument itself, the condition of the parties executing it, and the objects they had in view.

3. *Specific performance; ancillary injunction.*—An injunction in aid of a bill for specific performance, being merely ancillary, will not be granted, where the nature of the contract sought to be enforced does not authorize the interposition of a court of equity.

4 *Contracts as to personal property; specific performance nonenforcible; exceptions.*—Equity will not, in general, decree the

[Lewman & Co., *et al.* v. Ogden Bros., *et al.*]

specific performance of a contract concerning chattels, because their money value, recovered as damages, will enable the party to purchase others in the market of like kind and quality. Where, however, particular chattels have some special value to the owner over and above any pecuniary estimate—*pretium affectionis;* and where they are unique, rare, and incapable of being reproduced by money damages, equity will decree a specific delivery of them to their owner, and the specific performance of contracts with reference to them.

5 *Same; same; same.*—Specific performance might be decreed of a contract for the delivery of chattels, which no one but the defendant can supply, and which are necessary to enable the plaintiff to fulfill an engagement with a third party; but not where the delivery of the chattels, by the defendant, is a mere question of convenience.

6. *Specific performance; pleadings.*—In order to maintain a bill upon the theory that complainant's ·case is exempt from the general rule, the acts which bring the case within the exception to the rule must be averred.

7. *Specific performance; adequacy of remedy at law.*—The existence of an adequate remedy at law is a complete defense to a bill, filed to enforce the specific performance of a contract.

APPEAL, from Chancery Court of Marengo.

Heard before Hon. THOS. H. SMITH.

The appellants, M. T. Lewman & Co., had a contract with the United States for the erection of certain locks and dams, numbered 1, 2 and 3, in the system of improvement of the Warrior and Tombigbee rivers. Lewman & Co. sublet the contract to the appellees, Ogden Bros., under a written agreement, and also procured a bond with sureties from said Ogden Bros., conditional on their faithful performance of their contract. The contract is as follows:—

"EXHIBIT 'A.' "

"Sub-Contract."

"This agreement by and between M. T. Lewman & Co., of Louisville, Ky., a firm composed of H. L. Lewman, L. D. Lewman and W. C. Lewman, party of the first part, and Ogden Bros., of Baton Rouge, La., composed of J. N. Ogden, H. S. Ogden, and J. N. Ogden, Jr., party of the second part, witnesseth:—That, whereas the party of the

first part has obtained a contract with the United States Government for the building, completing and installment of Locks and Dams, Nos. 1, 2 and 3, in the system of improvement of the Warrior and Tombigbee rivers in the State of Alabama."

"And whereas, the party of the first part desires to sublet to the party of the second part a portion of the work on said Locks and Dams Nos. 1, 2 and 3, to be done and performed in accordance with the plans and specifications, terms and conditions, contained in said contract by and between the United States Government and the party of the first part."

"And whereas, the work herein contracted to be done by the party of the second part is the entire work described in the specifications of said Government contract, under the terms of excavations and excavated material, as defined in sections 47, 48, 49 and 50 of said specifications, and also includes, without additional cost to said first party, all excavation and analogous work, such as grading, all earth work or coffer dams, the complete handling and depositing, filling and removing and grading necessary to finish work and receive other work, and all excavated material, and all work incidental and analogous thereto, including all appliances, tools, machinery, etc., necessary to fully complete the contract of M. T. Lewman & Co., with the United States Government."

"It is agreed that the party of the second part shall do all the work herein contracted for under the direction of the party of the first part, subject to the direction and approval always of the engineer or other officer appointed by the government to direct and approve work on these locks. It is further agreed that all measurements as to excavations and excavated material herein contracted for and all other matters requiring measurement shall be governed by the said specifications contained in the original with the United States Government, and the decision of the Government engineer or officer shall be conclusive thereon."

"It is distinctly understood and agreed by and between the parties hereto that the party of the second part shall provide and furnish at his own expense all necessary and

proper labor, tools, teams, mules, scrapers, etc., and appliances and machinery to be used by him in the performance of his work under this contract."

"It is further understood and agreed that the party of the second part shall prosecute the work with diligence and speed so as to enable party of the first part to comply fully with his contract with the Government, and shall also prosecute said work so as not to interfere with, obstruct, or in any way delay the party of the first part or any other subcontractor who may be employed in the work."

"It is also understood and agreed that in case of failure of the party of the second part to do and perform the work contracted for to the satisfaction of the party of the first part and of the officer employed by the Government to overlook and supervise the same, or in case party of the second part shall interfere with, obstruct or delay party of the first part or any subcontractor in any work, which he or they may engage in, in the completion of the said original contract, or if for any other cause, the party of the second part shall be unable to carry out and perform work herein agreed to be done to the satisfaction of the party of the first part and of said officer of the Government, then and in any such event the party of the first part is hereby authorized and empowered to enter upon the premises, and for the purpose of completing the work included under this contract, take possession of all the tools, mules, camps, outfits, appliances and machinery of every description, of the party of the second part, and to use the same in doing or having done the "excavating and excavated material" and other work herein undertaken by the party of the second part until said work in building said locks is entirely completed, accounting, of course, to the party of the second part for the expense incurred, and if any balance remains after auditing accounts between the parties hereto, the said balance shall be paid over to the party of the second part if ascertained to be in his favor, and should a balance be found in favor of the party of the first part, the party of the second part shall make the same good to the party of the first part."

"It is further understood and agreed that the plans, specifications, instructions and conditions of the original contract between the United States Government and the party of the first part, so far as applicable, shall form a part of this contract the same as though they were fully incorporated herein."

"It is further understood and agreed that payments under this contract shall be due within ten days after receipt of each monthly payment by the Government, or officer in charge of the work, and shall be payable as follows: Eighty (80) per cent of the amount ascertained to be due for work done the preceding month, the remaining twenty (20) per cent. to be held and retained by the party of the first part until the completion and acceptance of the work by the Government and payment for same to the party of the first part."

"In consideration of the faithful performance by the party of the second part of all his covenants and agreements, the party of the first part agrees to pay the sum of twenty-one (21) cents per cubic yard for excavated material, measurements to be adjusted as herewith set forth. It is further agreed that the prices per cubic yard to be paid under this contract for excavations shall cover and include, without additional cost to the party of the first part, all grading, leveling, back filling, removing, protecting of stones, etc., that may be required under the plans and specifications contained in said original contract with the Government."

"It is further understood and agreed that the party of the second part shall deliver to the party of the first part a good and sufficient bond for the faithful performance of this contract, in the sum of twenty thousand ($20,-000.00) dollars, to be executed by an approved Guarantee and Surety Company now doing business in the United States within ten (10) days after this contract shall have been executed."

"It is further agreed and understood that the contract becomes operative when the Government, through its regular officers, shall have finally and definitely approved the location of said lock sites, or any one of them, work on this contract shall begin within twenty (20) days."

"This contract cannot be assigned or sublet, in whole or in part, without the written consent of the party of the first part."

"Witness our hands and seals to two copies of this instrument, interchangeably, on this twenty-second day of April, 1903."

"(Signed) M. T. LEWMAN & CO.  (Seal.)"

"Per L. D. Lewman."

"OGDEN BROS.  (Seal.)"

"Per H. S. Ogden."

"Attest:"

"ED. B. COSBY,"

"E. W. FOSTER."

The bill recites that Ogden Bros. had violated their contract, by ceasing work on said government improvements, and by attempting, secretly, to remove into another State the personal property, mentioned in their contract with complainants. That said personal property was located in several counties. That, upon discovering the attempts of defendants to remove said chattels, complainants made a written demand on defendants for the same, and, upon surrender being refused, sued out a writ of detinue for the same and had the same levied on a portion of said chattels. The complainants aver that the remedy by detinue is inadequate, in that the parties defendant may, by executing forthcoming bonds, regain possession of the property and remove it from the jurisdiction of the courts. The bill further avers that a court of equity should intervene to prevent a multiplicity of suits; that the chattels described in the sub-contract are necessary to carry out complainant's contract with the government, and that it is necessary to complete the work at the present season of the year, and at the present stage of water. The bill contains a prayer for an injunction to defendants, restraining them from removing, or in any manner interfering with, the chattels mentioned in said sub-contract, and for general relief. A motion to dismiss the bill for want of equity was sustained by the chancellor, and from this decree complainants appeal.

[Lewman & Co., *et al.* v. Ogden Bros., *et al.*]

TAYLOR, WOLFE & HEARIN and MCDANIEL & POWELL, for appellants.—Exhibit "A" is an equitable mortgage, and enforceable only in equity. "A mortgage is what the word imports, a gage or pledge of the thing mortgaged," —in this case the tools, outfit, etc,—"That the mortgagor will pay the specified debt, or perform the specified duty;"—1 Jones on Mort. § 16, note; 20 Am. & Eng. Ency. Law, p. 897-898; *Haynie v. Robertson,* 58 Ala. 37; *Roberts v. Hein,* 27 Ala. 678; *Beard v. Smith,* 71 Ala. 568.

If the contract resolves itself into a security, whatever may be the form, it is in equity a mortgage;—1 Jones on Mortg., 162; *Kyle v. Bellinger,* 79 Ala. 521.

Specific performance will be granted when the ascertainment of the damages caused by the breach, would be so difficult as to render inadequate the remedy at law;—*Barnwell v. Newark,* N. J. Eq. 260; *Williams v. Montgomery,* 146 N. Y. 513; 43 N. H. 57; *Furman v. Clark,* 11 N. J. Eq. 306; *Sullivan v. Turk,* 1 Md. Ch. 59; 90 Ala. 103; 20 Ency. of Pl. & Pr., § 402, and note.

ELMORE & HARRISON and GREG L. & H. T. SMITH, *contra.*—The contract upon which the suit is founded, is not a mortgage. The existence of a pecuniary obligation, and the right to sell the property, either under a power of sale, or a decree of the chancery court, are essential elements of a mortgage. It is impossible to regard this instrument as a mortgage, where it has no law day for its maturity.

If the complainants have any right to the possession of the property, it is a right under the contract, and any bill, which seeks to enforce its performance in lieu of a recovery of damages, is, in effect, a bill for its specific performance.

The specific performance of a contract can never be decreed, where the complainant has an adequate remedy at law for its breach.—*Electric Light Co. v. Mobile, et al.,* 109 Ala. 193; *Savery v. Fence,* 13 Ala. 562.

A court of chancery will never undertake to specifically enforce the performance of a building contract, extending over a long period of time, and requiring a multiplicity of things.—*Electric Light Co. v. Mobile,* 109

Ala. 193; *Chadwick v. Chadwick*, 121 Ala. 580; *L. & N. R. R. Co. v. R. R. Co.*, 98 Ala. 400.

A court of chancery will not take possession of personal property away from the party in possession, and confer the possession on the complainant, by means of an injunction *pendente lite.*—*Beaver v. Toner*, 54 S. W. Rep. 732; *McCombs v. Merrihew*, 40 Mich. 724; *Solny v. Johnson*, 35 Mich. 489; *People v. Judge of St. Clair Circuit*, 31 Mich. 456; *People v. Jones*, 33 Mich. 303; *Fitzpatrick v. Featherstall*, 3 Ala. 40; *Yellow Pine Export Co. v. Sutherland-Innis.* Ala. (MSS); 16 Am. & Eng. Ency. p. 364.

Where a party has elected to pursue one of two remedies, he cannot, pending such suit, go into another court for the enforcement of the other remedy.—*Sanger v. Wood*, 3 Johns Ch. 316; *Dixon v. Richardson*, 16 Ark. 114; *Bentley v. Dillard*, 6 Ark. 79; *Nelson v. Dunn*, 15 Ala. 572; *Hause v. Hause*, 57 Ala. 262; *King v. Smith*, 15 Ala. 269.

DENSON, J.—The bill was demurred to and a motion to dismiss it for want of equity was made. On the hearing, the chancellor held that the bill was without equity and granted the motion to dismiss it; from the decree granting that motion this appeal was prosecuted.

We confess that the purpose of the bill has not been made to appear to our minds as definite as it seems to have appeared to the minds of the counsel for appellants. In their brief they assert, that the bill is clearly one for the specific performance of an equitable mortgage. Referring by the terms equitable mortgage, to the contract which was entered into on the 22nd day of April, 1902, between complainants and respondents, Ogden Brothers, a copy of which was made a part of the bill as exhibit A. It seems to us that the essential features of a mortgage, equitable or otherwise, are lacking in that instrument. No debt is shown to have existed at the time of its execution, for which the instrument was to stand as security, nor does it appear that it was intended by the parties that it was to operate as security for any contingent liability.

A cardinal rule to be applied in the construction of written instruments is, that the intention of the parties to it must prevail, "And to ascertain that intention, regard may be had to the nature of the instrument itself, the condition of the parties executing it, and the objects they had in view."—*Strong v. Gregory,* 19 Ala. 147; *Bryant v. Bryant,* 35 Ala. 315.

Sometimes instruments inartificially drawn are held to operate as equitable mortgages, but, the essential feature of a debt due or to become due must exist, or it must appear that it was the intention of the parties that the instrument should operate as security for some contingent liability —Jones on Chattel Mortgages (3rd ed.), §§ 82, 83; *Jones v. Charleton,* 51 Ala. 166.

If regard to the surrounding circumstances and acts of the parties, at the time the instrument or contract was executed, be permissible, it would seem that the fact that Ogden Brothers executed. and complainants received, bond with security for the faithful performance, by Ogden Brothers, of the duties imposed upon them by the contract, would repel the idea of any intention that the contract should operate as an equitable mortgage.

The instrument does not appear to have been inartificially drawn, on the contrary, skill is manifested in its structure. Our construction of the contract in respect of the property is, that it is a covenant with the complainants by Ogden Brothers, for the use by complainants of the property in doing the work contracted to be done by Ogden Brothers, in the event of a failure on the part of Ogden Brothers, in the performance of the duties imposed upon them by the terms of the contract, with the privilege or right on the part of complainants to take possession of the property for that purpose.

It is manifest, however, that, if the complainants have any right to the possession of the property, it must be a right given under the contract; and the bill being based upon the contract, seeking its performance in lieu of a recovery of damages for its breach, its sufficiency must be tested by the rules of procedure and substantive law applicable to cases of specific performance of contracts. This seems to be conceded by appellants.

This must be true, notwithstanding there is no special prayer for the enforcement of the performance of the contract, the subject matter of controversy. The bill contains the averment that there is no adequate remedy at law, whereby complainants can obtain possession of the property under the contract and to use the same in completing the work contracted to be done by Ogden Brothers. It also contains a prayer for injunction to restrain the defendants from removing the property, or in any manner interfering with it. This must be held as the equivalent of a prayer for specific performance, "Converting the bill, if not in form and letter, in substance and spirit into a bill of that character."—*Electric Lighting Co. of Mobile v. Mobile & Spring Hill Ry. Co.,* 109 Ala. 190.

"An injunction in aid of specific performance is merely ancillary. The primary inquiry is, necessarily, whether the contract on which the bill is founded is of the nature and character of which the court is accustomed to decree specific performance. If it is not of this nature and character, or, if for the injury of which complaint is made the law provides an adequate remedy, the bill fails, and the incidental or consequent remedy by injunction must fail."—*Electric Lighting Co. of Mobile v. Mobile & Spring Hill Ry. Co., supra;* Hilliard on Injunction, p. 54, § 102.

Construing the bill, then, as one for the specific performance of an executory contract relating to personal property, we will consider the equities of the complainants upon the averments of the bill, in the light of well established rules of equity applicable to that remedy.

"Equity will not, in general, decree the specific performance of a contract concerning chattels, because their money value, recovered as damages, will enable the party to purchase others in the market of like kind and quality. Where, however, particular chattels have some special value to the owner over and above any pecuniary estimate—the *pretium affectionis;* and where they are unique, rare and incapable of being reproduced by money damages, equity will decree a specific delivery of them to their owner, and the specific performance of contracts

with reference to them."—3 Pom. Eq. Juris. p. 441, § 1402; *Moses v. Scott*, 84 Ala. 608; *Dilbum v. Youngblood & Co.*, 85 Ala. 449; *Powell v. Central Plank-road Co.*, 24 Ala. 441; *Savery v. Spence*, 13 Ala. 561; *Morris v. Tuscaloosa Co.*, 83 Ala. 565.

It is sought to exempt complainants' case from the general rule above stated, upon the theory that the property is already located at the locks and dams, the places where the work is to be done; that the property is especially adapted to the work and that the work must be done at this season of the year (July, 1904), and stage of the water.

The bill in this respect avers, "That most of said property consists of appliances and machinery bought specially and specifically for this work under said contract—Exhibit A—and that it is fitted and adapted specially for the specific work on said locks and dams, and orators aver further that the work on said locks must be done at this season of the year and at this stage of the water." We do not understand that the mere fact that property which is adapted to certain use or work and is at the point where the work is to be done brings the party seeking specific performance within the exception to the general rule as above stated. It does not appear that like property might not have been readily and without unreasonable delay procured. It may be that where goods of special value have been sold, and there are no other similar goods in the market, a contract for the delivery of them would be specifically performed. But there is a total failure or lack of averments in the bill in this respect.

"Or, specific performance might be decreed of a contract for the delivery of chattels, which no one but the defendant can supply, and which are necessary to enable the plaintiff to fulfill an engagement with a third party; but not where the delivery of the chattels by the defendant is a mere question of convenience."—Waterman on Specific Performance, §§ 17, 18; *Moses v. Scott*, 84 Ala. p. 611.

In order to maintain the bill upon the theory that complainants' case is exempt from the general rule which has been enunciated, the facts which bring the case

within the exception to the rule must be averred.—*Blackburn v. Fitzgerald,* 130 Ala. on page 588.

But if it should be conceded that the bill in the respect above mentioned could be amended and that, on motion to dismiss for the want of equity, it should be considered as amended, yet, the objection to the bill that there is an adequate remedy at law would not be disposed of. Conceding that the property is particularly adapted to the uses it was desired to be put to by the complainants, and that other property of similar kind could not be readily procured, yet it does not appear that the plaintiff could not be fully compensated in damages in a suit at law against the respondents, Ogden Brothers, and the sureties on the bond which was executed by them to complainants for the faithful performance of their obligations under the contract. There is nothing averred in the bill which tends to show that the breach of the contract, on the part of the defendants, will result in any forfeiture of complainants' contract with the government, or that time is of the essence of the complainants' contract with the government. Neither does it appear from the averments of the bill that injuries, which may accrue to complainants from a breach of their contract with defendants, may not be readily estimated by a jury and damages commensurate with them all given in the courts of law.—*Powell v. The Central Plank Road Co.,* 24 Ala. 441.

The complainants, desiring the possession of the property and asserting their right to it under the contract, on the 25th day of July, 1904, made demand in writing on the respondents, Ogden Brothers, for possession of it and, upon the refusal by Ogden Brothers to deliver the possession, complainants on the 26th day of July, 1904, four days before the bill in this case was filed, commenced an act of detinue in the circuit court to recover possession of the property, and much of said property was seized under the writ. But the plaintiffs aver that the remedy by detinue is inadequate, in that the parties defendant may, by executing forthcoming bonds, regain possession of the property and remove it from the jurisdistion of the courts. In this view of the case it might

be said, that the complainants' appeal, to the chancery court for relief, was an appeal to that court to save them from themselves. They knew, at the time that the detinue suit was resorted to, of the statute which authorizes defendants to execute forthcoming bonds and thereby retain possession of the property, and they were also cognizant of the legal principle which regards property seized under a writ of detinue, although restored to the possession of the defendants in the detinue suit, upon the execution of a forthcoming bond, as being in *gremio legis.* Notwithstanding this principle of law, the chancery court by the bill for specific performance is asked to withdraw the property, seized under a writ issued at the suit of complainants in a court of law, from the jurisdiction of that court and give it into complainants' possession. If this request should be granted, would not a conflict in the jurisdiction of the two forums be wrought?—*Dollins v. Lindsey,* 89 Ala. 217; *Joseph v. Henderson,* 95 Ala. 213; *Stanton v. Heard,* 100 Ala. 515.

True, the defendants may execute the forthcoming bond in the detinue cases, but is this any reason for equitable interference when the complainants by their own act conferred that privilege upon the defendants? Moreover, the condition of the forthcoming bond under the statute is, that the defendants, if cast in the suit, will, within thirty days thereafter, deliver the property to the plaintiffs and pay all costs and damages which may accrue from the detention thereof.—Code § 1474. So it seems to us, that the complainants, having by their own conduct placed it in the power of the defendants to retain the possession of the property by executing forthcoming bonds, should not be allowed to claim this as a ground for equitable relief.

The doctrine that equity will interfere to prevent a multiplicity of suits has no foundation for its application in this case.—1 Pomeroy's Equity Juris, §§ 249, 255. If complainants have an adequate remedy at law against defendants for breach of the contract and the bond given to secure the performance of the contract, we do not see any necessity for, or danger of, a multiplicity of suits.

Upon the whole case, as shown by the bill and amended bill, we do not see that a court of law, if applied to, could

not furnish ample relief. The chancellor took this view of the case, held that the complainants have an adequate remedy at law and dismissed the bill for want of equity. Without prolonging this opinion by further discussion of the case, our conclusion is, that, admitting the facts apparent on the face of the bill as amended, it is without equity and the decree of the chancellor dismissing the bill for want of equity is

Affirmed.

McCLELLAN, C. J., HARALSON and DOWDELL, J.J., concurring.